A. T. PICKERELL, Curator, &c., *v.* F. M. FISK.

A steamboat was purchased to be resold, and not to be engaged in the carrying trade. *By the Court:* Under the circumstances the parties were merely joint owners of the property, and not partners, or joint traders within the meaning of the law.

A partnership is founded on the voluntary contract of the parties, as contradistinguished from the relations that may arise between them by the mere operation of law, independent of such contract.

The surviving partner cannot alienate the partnership property. The power to alienate ceases with the dissolution of the partnership; the heirs of the deceased become joint owners of the common property, and the survivor can only dispose of his right in the thing sold.

An action for the recovery of the value of property belonging to a succession for which the defendant has made himself liable, is not an action for damages resulting from an offence, or a quasi-offence, and the prescription of one year is inapplicable to it.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.
*Wolfe & Singleton,* for plaintiff. *Bartlette & Collins,* for defendant and appellant.

VOORHIES, J. This is a suit brought by the curator of the succession of the late *Harvey St. John,* to recover of the defendant one-half of the value of the steamer Eudora.

The plaintiff alleges that the defendant purchased the steamer jointly with *St. John,* through the agency of *John T. Jeter,* for the price of $2000, at a public sale made by the government of the United States, on the 9th of November, 1848, their title to which being consummated by *Jeter's* transfer to them on the 13th of the same month; that the deceased paid, as his portion of the price and expenses incident to the purchase, the sum of $1,031; that the defendant took possession of the steamer about the 12th January, 1849, and disposed of her for his own use and benefit, and has refused to account to the succession for its interest therein; that said steamer, purchased much below her real value, was worth $15,000, to one-half of which the succession is justly and legally entitled. He further alleges, that the defendant took possession of the steamer after the death of *St. John,* and previous to the appointment of the curator, and converted her to his own use, &c.

The defendant, among other things, pleaded that the steamer was bought on speculation by *St. John, Jeter,* another person, and himself, each for one-fourth : that afterwards the agreement was changed, whereby he acquired one-half, and *Jeter* and *St. John,* each, one-fourth of her; that he was to advance the purchase money, and the title was to be taken in the joint name of *St. John* and himself; that the price, $2,000, was paid one-half by himself and the other by *St. John,* who obtained a loan for that purpose on his endorsement; that he became liable for and paid said loan; and that the steamer was to be fitted out and sent to New York to be resold, &c.

The evidence shows that *St. John* and *Fisk* were the joint purchasers of the steamer for the price of $2,000, one-half of which was paid by each of them; that after the death of *St. John,* and previous to the appointment of the curator, *Fisk* took possession of the steamer, then lying at the port of New Orleans, and sent her off to New York, and that she was lost on her voyage thither. There is an admission in the record, that the vessel was purchased by the parties on speculation, to be sent to New York for resale. But it is manifest they did not intend to engage her in the carrying trade.

Under the circumstances, we think the parties were merely joint owners of the property, and not partners or joint traders, within the meaning of the law. " A community of property does not of itself create a partnership, however that property may be' acquired, whether by purchase, donation, accession, inheritance, or prescription." C. C. 2777. A partnership is founded upon the voluntary contract of the parties, as contradistinguished from the relations which may arise between them by the mere operation of law, independent of such contract. Partnership and community, says Pothier, are not the same thing. The first is founded upon the contract of the parties, which thus creates the community; the last may exist independent of any contract whatsoever. Pot. De Société, p. 2. As an illustration, in the case of the part owners of a ship, who are treated as tenants in common thereof, each having a distinct although an undivided interest in the whole. They thus may properly be said to have an undivided interest in the ship; and yet that interest does not make them partners. As Duranton says: La société aussi produit une communauté; en un mot, toute société est bien une communauté : mais toute communauté n'est point une société. Il faut pour cela la volonté des parties." Dur. Droit Fran., vol. 17, § 320.

But even supposing that the purchase constituted a partnership between the parties, still in what respect could it materially alter the position of the defendant? The partnership was dissolved by the death of *St. John*, previous to the removal of the property. The doctrine as to the power of the surviving partner to alienate the property, movable or immovable, of the partnership, is clearly settled in the case of *Simmons* v. *Parker*, 4 N. S. 207, where it was expressly held, that such power ceased with the dissolution; that the heirs of the deceased became joint owners of the common property, and the survivor could only dispose of his right in the thing sold. See also the case of *Shipman et al.* v. *Hickman et al.*, 9 R. R. 149. It is clear, therefore, that the defendant had no power to dispose of the vessel. Having done so, it was at his peril, and he is bound to account to the succession either for the property or its value.

The case of *Jouanneau, curator,* v. *Shannon*, 4 An. 330, relied on by defendant, does not appear to us to be analogous to the present. In that case, the vessel was engaged in the carrying trade, and *Whipple*, the one-fourth owner, had died; it was held, that public policy and the interest of the surviving partner, required that she should not lie idle at the wharf, but be usefully employed. The peculiar circumstances presented in that case, illustrate very strongly the propriety of maintaining such a principle, even after the death of the part owner. The steamer, it appears, had been advertised to leave, on her usual voyage, on the day of *Whipple's* death. She was a regular packet, had been taking in cargo on the day of his death and the day previous, and was heavily laden. She was lost on her voyage. It was held, that *Miller*, the surviving partner, having a right to employ the boat usefully, was not bound to bear the burden of the whole loss in the absence of proof that it was occasioned by any misconduct or negligence on his part. But in the present case, it is essentially different; the vessel was not engaged in the carrying trade, but sent to New York for resale.

We are of opinion the prescription of one year, on which the defendant relies, is inapplicable to the present action. It is not an action to recover damages resulting from an offence or quasi-offence, but one for the recovery of the

value of property of the succession for which the defendant has made himself liable.

The only question which remains to be determined is, whether the proof is sufficient to justify the amount awarded in favor of the plaintiff by the verdict of the jury. We think not. One-half of the value of the property in question, was the only amount which the succession could recover. The purchase money was $2,000. The weight of the testimony shows, that the steamer could not have been used at New Orleans at a profit. As the expenses of the repairs previous to the death of *St. John,* appear to have been defrayed by the defendant, it follows that the succession has no right to the additional value of the property resulting therefrom.

It is therefore ordered and decreed, that the judgment of the court below be avoided and reversed; that the plaintiff recover of the defendant, the sum of one thousand dollars, with legal interest from the 26th of May, 1854, together with the costs of the District Court; and that the costs of this appeal be borne by the plaintiff and appellee.