(93 South. 490)

No. 24226.

## LILES et al. v. BARNHART et al.

(June 5, 1922. Rehearing Denied July 17, 1922. Dissenting Opinion, Sept. 25, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Action** ⊂⟹27(1)—**One may have demand upon which he may sue in tort, or contract, and may waive the contract and sue in tort.**

One may have a demand against another upon which he may sue in tort, or upon a contract, or quasi contract, and in such instances may disregard the contract or quasi contract and bring the action arising from the tort.

2. **Limitation of actions** ⊂⟹16—**Prescription; form of action brought determines applicable prescription.**

Where one has a moneyed demand upon which he may sue in tort or upon a contract or quasi contract, the form of the action which he elects to bring determines the prescription.

3. **Limitation of actions** ⊂⟹30—**Prescription; action held one for quasi offense and not for money had and received.**

As respects prescription, an action for the value of oil and gas taken from land in which plaintiffs had an undivided one-fifth interest, upon allegations that one of the defendants in granting a lease to the other wrongfully included plaintiffs' interest, and, that the lessee wrongfully took therefrom great quantities of oil and gas, is an action for damages for a quasi offense, and not for money had and received.

4. **Limitation of actions** ⊂⟹30—**Prescription of one year applies to wrongful taking of oil and gas from land.**

The prescription of one year provided by Civ. Code, art. 3536, for damages for offenses and quasi offenses, applies to an action for the value of oil and gas wrongfully taken from land by one trespassing thereon.

5. **Limitation of actions** ⊂⟹95(1), 195(3) — **Prescription; runs from time plaintiff learns of wrongful taking of oil and gas; burden on plaintiff to show time of learning of tort.**

Prescription runs against an action for the value of oil and gas wrongfully withdrawn from land from the time knowledge is received by plaintiff of such wrongful extraction, and the burden is on plaintiff to show when he received such knowledge.

6. **Limitation of actions** ⊂⟹43—**Prescription runs from time cause of action accrues.**

While one cannot sue until his cause of action accrues, prescription begins to run the moment it does accrue, and, unless suit is brought within the prescriptive period, it is barred unless prescription is interrupted or suspended by petition and citation, or by the debtor's acknowledgment of the debt.

7. **Limitation of actions** ⊂⟹105(2)—**Prescription; petitory action held not to interrupt prescription against demand for value of oil and gas taken from land.**

A petitory action in which plaintiffs made no demand for the value of oil and gas wrongfully taken from the land, but merely reserved the right to sue therefor, did not interrupt prescription against such demand.

8. **Limitation of actions** ⊂⟹16—**Prescription against demand for taking oil and gas by co-owner while in adverse possession not avoided by suing for partition.**

The rule that under Civ. Code, art. 1304, incidental demands between the parties to a partition suit are not prescribed so long as the action of partition may be maintained, does not apply to a demand for oil and gas taken from the land under a lease from a co-owner in adverse possession of the whole land as owner apparently in good faith under deeds on their face translative of property.

9. **Judgment** ⊂⟹17(1)—**Personal judgment cannot be rendered on constructive citation.**

No personal judgment can be rendered against an absent defendant cited only constructively.

10. **Partition** ⊂⟹100—**Appraisals to be made where co-owner had given lease on whole property stated.**

In a suit to partition land between plaintiffs and B., who had given a lease of the whole property to another defendant, separate appraisals should be made of the interest in the land of both plaintiffs and B., of the lease on the entire tract, of the royalties in the entire lease, and of the wells and other property attached to the lease and belonging to the lessee, in order that the interest of each party in the proceeds of the sale may be ascertained.

11. **Partition** ⊂⟹111(1)—**Lessee held not entitled to have deficiency in share of selling price made good from its lessor's interest.**

In a suit to partition land between plaintiffs and B., who had given another defendant a lease of the entire property, the lessee, in

case the amount payable to it out of the proceeds of the sale is less than the total appraised value of its rights in the property, is not entitled to be paid the balance out of B.'s share, as the amount those rights bring at the sale represent their value more correctly than the amount fixed by the appraisers.

**12. Mines and minerals ⬤⟹76—Judgment in favor of evicted lessee against lessor whose title failed in part held proper.**

Where the lessee under an oil and gas lease was evicted so far as an undivided one-fifth interest was concerned, a judgment in its favor against its lessor for one-half of the royalties paid him within the period of prescription and one-fifth of bonus paid by it for the lease *held* proper.

**13. Mines and minerals ⬤⟹76—Lessor not liable to lessee for all oil extracted in event of eviction.**

The lessor under an oil and gas lease under his warranty is not liable to the lessee for the value of each barrel of oil extracted from the leased premises in the event of eviction.

Dawkins, J., dissenting, and St. Paul, J., dissenting in part.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Action by Mrs. Mary J. Liles and others against W. E. Barnhart and others. From the judgment, plaintiffs and the defendant Gulf Refining Company of Louisiana appeal. Judgment amended in part, annulled and set aside in part, and affirmed in part.

J. S. Atkinson and Thigpen, Herold & Lee, all of Shreveport, for appellant Gulf Refining Co. of La.

Hall & Bullock and G. H. Holder, all of Shreveport, for appellants.

Cook & Cook, of Shreveport, for curator of the absentee, W. E. Barnhart.

By the WHOLE COURT.

OVERTON, J. Plaintiffs and one of the defendants, W. E. Barnhart, are the owners, in indivision, of a certain tract of land, consisting of approximately 22 acres, situated in the parish of Caddo; the plaintiffs owning one-fifth and Barnhart four-fifths. Plain-

tiffs were recognized as the owners of their one-fifth interest in the suit of Liles et al. v. Pitt et al., reported in 145 La. 650, 82 South. 735.

Some time prior to the institution of that suit, Barnhart, who was then claiming ownership of the entire tract, granted a mineral lease on it to the Gulf Refining Company of Louisiana.

Under the lease, the Gulf Refining Company entered upon the land, bored wells for oil, and, it is alleged, wrongfully withdrew therefrom large quantities of oil and gas exceeding $500,000 in value. Therefore, it is alleged that both Barnhart, the lessor, and the Gulf Refining Company, the lessee, are indebted, in solido, unto plaintiffs for their one-fifth part of the oil and gas, or the proceeds thereof, thus taken from the land, less one-fifth part of the cost of production. This part, less their proportion of the cost of production, they allege, exceeds $100,000 in value. They further allege that they are unable to fix the amount thereof with exactness, and are therefore entitled to an accounting from the Gulf Refining Company and from Barnhart, so that the exact amount may be ascertained.

Plaintiffs also allege that, when judgment was rendered in their favor, declaring them to be the owners of a one-fifth undivided interest in said land, Barnhart appealed suspensively from that judgment to this court; and on July 8, 1915, furnished as surety on the appeal bond the United States Fidelity & Guaranty Company. It is further alleged that this company signed the bond in the sum of $13,440 to secure to plaintiffs their part of whatever oil or gas, or the proceeds thereof, that might be delivered or paid to Barnhart during the pendency of the appeal; that the appeal was decided on June 30, 1919; that they are entitled to an accounting from Barnhart and the Gulf Refining Company, showing the amount paid

to Barnhart during that period, and to judgment against the surety company, on the bond, for the amount shown to have been so received by Barnhart.

Plaintiffs also allege that they desire a partition of the real estate, mentioned in the first part of this opinion. They allege that it cannot be divided in kind, and therefore that it should be partitioned by licitation.

Plaintiffs pray (according to the prayer of their original petition, as amended by their first and second amended petitions) for a partition of said land by licitation; for judgment ordering said accounting; and for judgment against Barnhart and the Gulf Refining Company, in solido, for one-fifth of the value of all oil and gas wrongfully taken from said land, less the reasonable cost of production; and for judgment against the United States Fidelity & Guaranty Company for the amount received by said Barnhart, during the pendency of said appeal, not to exceed the amount of the appeal bond; and they pray for legal interest on the judgment to be rendered against each defendant, from judicial demand until paid.

The Gulf Refining Company and Barnhart, for answer to the above demand, deny all liability to plaintiffs for anything therein claimed; and plead against the demand, arising from oil taken by them from said land, the prescription of one year. Both deny that the land is indivisible in kind, and hence deny that a partition by sale is necessary. The Gulf Refining Company, however, asks that, in the event a partition by sale should be found necessary, then that its rights as lessee and the rights of the owners of the land be separately appraised, and the proceeds of sale ratably distributed among them; and that, should the amount, payable out of said sum to it, be less than the total value of its rights in said property as appraised, then that such portion of the fund, as would be payable to Barnhart, be paid to

it, up to the total value of its rights, as thus fixed. The Gulf Refining Company further prays that its lessor, Barnhart, be called in warranty, and that it have judgment against him, in the event plaintiff should recover judgment, for all amounts that it has paid Barnhart, and for all amounts that it may be condemned to pay plaintiffs.

Barnhart is an absentee, and therefore a curator ad hoc was appointed to represent him, who, in Barnhart's behalf, denies all liability to plaintiffs, and pleads the prescription of one year in bar of plaintiffs' demand.

The United States Fidelity & Guaranty Company answered and excepted to the suit. The exception was argued and taken under advisement, but does not appear to have been passed upon. That company made no other appearance, and issue was not joined as to it.

The lower court, after trial, rendered judgment ordering that the land be sold at public auction for cash, to effect a partition; plaintiffs to have one-fifth of the proceeds of the sale, and Barnhart the remaining four-fifths; and condemning the Gulf Refining Company to pay plaintiffs $7,173.26, with 5 per cent. per annum interest thereon from July 20, 1919, until paid, being one-fifth of the value of oil and gas taken from said land, less the cost of production, for the year immediately preceding the institution of the present suit, up to August 31, 1919; and maintaining the plea of prescription of one year, as to all other demands of plaintiffs. The trial also resulted in judgment in favor of the Gulf Refining Company and against its warrantor, Barnhart, for $1,247.04, being one-fifth of the royalty paid to him during the year immediately preceding the institution of this suit, and up to August 31, 1919, with 5 per cent. interest thereon from July 20, 1919, until paid, and for $600, representing one-fifth of the bonus paid to Barnhart,

at the time the Gulf Refining Company acquired the lease, with legal interest thereon from February 5, 1913, until paid. The right was also reserved the Gulf Refining Company to remove from the leased premises all the pipe, machinery, and other fixtures placed thereon by it, except such as are attached to and form part of the wells.

From this judgment, plaintiffs and the Gulf Refining Company have appealed. The curator ad hoc for Barnhart has filed no answer to the appeal.

It appears from the evidence that on February 5, 1913, and prior thereto, Barnhart was claiming the ownership of the entire tract of land from which the oil was afterwards produced, under a deed, which on its face, was translative of property. On that date he granted the mineral lease, mentioned above, to the Gulf Refining Company. Under that lease, the Gulf Refining Company exploited the land, and extracted therefrom large quantities of oil and some gas, and paid royalties, in large amounts, to its lessor, Barnhart. The plaintiffs, shortly after the discovery of oil, brought their suit, above referred to, against Leland H. Pitts et al., which included Barnhart as one of the defendants, to recover their undivided interest in the land in question, and in other lands. In so far as it is necessary to state, that suit resulted, in the trial court, in the recovery, by the plaintiffs herein, of a one-fifth undivided interest in the land now in question. Barnhart appealed suspensively from that judgment, furnishing the United States Fidelity & Guaranty Company as surety on the appeal bond, in the sum of $13,440. On appeal, the judgment of the lower court was, on rehearing, affirmed. Liles et al. v. Pitts et al., 145 La. 650, 82 South. 735. There is no dispute as to the amount of oil and gas obtained from the land by the Gulf Refining Company, nor as to the value thereof, nor as to the amount that was received for the same, nor as to the amounts paid Barnhart by the Gulf Refining Company, as royalty. That company filed a statement showing these amounts, in response to the demand of plaintiffs for an accounting. The statement is accepted as correct by all of the parties to this suit.

The vital question to be determined, in so far as respects the moneyed demand of plaintiffs, is whether the prescription of one year, prescribed by articles 3536 and 3537 of the Civil Code, for actions for damages, arising from offenses and quasi offenses, is applicable. Defendants contend that it is, basing their contention on the theory that plaintiffs' demand for a moneyed judgment is one for damages arising out of a quasi offense; whereas, plaintiffs assert that such is not the case, and contend that their demand is one for money had and received.

[1, 2] It is possible for one to have a moneyed demand against another upon which he may sue in tort, or upon a contract, or quasi contract. In such instances, he may disregard the contract or quasi contract and bring the action arising from the tort. The form of the action, in such instances, that plaintiff elects to bring, determines the prescription applicable. Morgan's Louisiana & Texas R. R. & S. S. Co. v. Stewart, 119 La. 392, 44 South. 138; Sims v. New Orleans Ry. & Light Co., 134 La. 897, 64 South. 823. Therefore, as to whether the contention of plaintiffs or defendants is correct, as to the applicability of the prescription of one year, involves, in part, an examination of the allegations and prayer of plaintiffs' petition.

[3] The prayer of plaintiffs' petition, considered in connection with the amended petitions filed, is that they have judgment against Barnhart and the Gulf Refining Company, in solido, for one-fifth of the value of all oil and gas taken from the land, less the reasonable cost of producing the same. This prayer does not take into consideration the

money actually received by Barnhart or the Gulf Refining Company for the oil and gas. It does not adopt or confirm the sales that either made of those minerals, but ignores the price they may have received for them, and calls for judgment for their value. The prayer for judgment, in solido, is based upon the allegation that Barnhart, in granting the lease to the Gulf Refining Company, wrongfully included plaintiffs' one-fifth interest in the land, and upon the allegation that the Gulf Refining Company wrongfully took therefrom great quantities of oil and gas. In short, the theory of plaintiffs' petition is that Barnhart and the Gulf Refining Company were joint tort-feasors, and it is upon that theory that they are sued in solido for the value of the oil and gas. The present phase of plaintiffs' suit is nothing more than one for damages, for a quasi offense, the amount of which is the value of the oil and gas. In no sense is it a suit for money had and received. Therefore the authorities cited by plaintiffs, based upon that hypothesis, are not pertinent.

[4] As the declaration in plaintiffs' petition, on the appeal bond, appears to be only against the United States Fidelity & Guaranty Company, the surety on the bond (for judgment is asked only against it thereon), and as issue does not appear to have been joined as to that company, and as that phase of the case is not mentioned in the briefs, we take it that the suit on the bond is no longer a part of the case; and that the only part of plaintiffs' moneyed demand that is before us is the part based on the wrongful extracting and taking of oil and gas from the land. Considering therefore that the suit on the bond is in no sense before us, we are of the opinion that the plea of prescription of one year is well founded as to all of the oil and gas extracted and taken over a year prior to the service of citation in this suit.

Article 3536 of the Civil Code provides that actions for damages for offenses and quasi offenses prescribe in one year, and article 3537, as amended by Act No. 33 of 1902, fixes the time from which this prescription begins to run. This court has repeatedly held, in suits for the value of timber cut and removed from land wrongfuly, that the prescription of one year, pleaded under those articles, is applicable; and, when well founded in fact, operates as a bar to recovery. There is no reason why those decisions should not apply to the present case. In principle, there is no essential difference between cutting timber off of land tortiously and selling it, or in manufacturing it into lumber and selling the manufactured product, and taking oil and gas from land tortiously and selling it. If, in the former instance, the prescription of one year bars the action for the value of the timber removed, for the same reason it should bar an action for the value of oil and gas extracted and taken from land.

In Shields v. Whitlock & Brown, 110 La. 714, 34 South. 747, which was a suit for the value of timber cut from land and disposed of, and also for trespass, it was held that the prescription of one year barred the action. In disposing of the question this court had occasion to say:

"Finally, it was suggested in the oral argument (and there seemed to be much force in the suggestion) that there ought to be a difference between the application of the prescription relied on as between the claim for damages resulting from the trespass, and the claim for the value of the property belonging to the plaintiff, which the defendants have appropriated to their own use. We feel very much inclined to the view that there ought to be such a difference, but it does not seem to be recognized by the law or the jurisprudence of this state."

In Davis et al. v. Ruddock-Orleans Cypress Co., 132 La. 985, 62 South. 114, it appears that the defendant and the plaintiffs were

at one time owners of certain land, in indivision. Defendant, however, asserted title to the whole of it under an alleged sheriff's deed purporting to convey to it the undivided half interest of plaintiffs, and accordingly took possession of the entire tract as owner, and not as a tenant in common with the plaintiffs. Defendant then cut therefrom the timber, and manufactured it into lumber. Plaintiffs, after the expiration of more than one year from the time defendant had brought these facts to their knowledge, filed suit for one-half of the amount received by defendant for the manufactured product, and for such other sum as might be found due on an accounting for which plaintiffs had prayed. The court held that plaintiffs' suit was barred by the prescription of one year. See, also, Citizens' Bank v. Jeansonne, 120 La. 393, 45 South. 367; Antrim Lumber Co. v. Bolinger, 121 La. 306, 46 South. 337; Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 54 South. 292.

Passing from those cases in which timber was wrongfully cut from land and sold, or converted into lumber and sold, and in which the suit involved a demand for the value of the timber, or of the manufactured product, to those cases in which property was wrongfully taken or received and converted, and the suit was for its value, or for the value of the manufactured product, we find that the weight of authority upon the question, as to whether the prescription of one year is applicable, supports the affirmative of that question, though there are cases to the contrary. Those to the contrary are Pickerell, Curator, v. Fisk, 11 La. Ann. 277; Gaty, McCune & Co. v. Babers, 32 La. Ann. 1091; Burney v. Ludeling, 47 La. Ann. 73, 16 South. 507. The case of Morgan's La. & Tex. S. S. Co. v. Stewart, 119 La. 392, 44 South. 138, cited by plaintiffs to show that the prescription of one year is not applicable, does not, in our view, support that contention. That case was for the recovery of money paid in error, the error having been superinduced by the fraudulent representations of the defendant. The suit was for the specific amount paid; and the action was based on the implied, or quasi contract to return. The decision carefully differentiates the action from one in tort. The case of Keary v. Ducote, 23 La. Ann. 196, also cited by plaintiffs, does not support their contention. That suit was one for the recovery of a house, which the defendant had wrongfully torn down, and rebuilt on his property. It is true that the suit contained an alternative demand for the value of the house. The court, however, did not allow that demand, but decreed plaintiff to be the owner of the house, and overruled the plea of prescription of one year, upon the specific ground that the suit was for the recovery of the property, itself.

On the other hand, as supporting the affirmative of the proposition, that is to say, the position that when one wrongfully takes or receives property, and is sued for its value, the action is regarded as one for damages arising out of and based on an offense or quasi offense, and that the prescription of one year is applicable, may be found the following cases: Harper v. Municipality No. 1, 12 La. Ann. 346; Millspaugh v. City of New Orleans, 20 La. Ann. 323; Wood v. Harispe, 26 La. Ann. 511; Bender v. Looney, 22 La. Ann. 488; Burch v. Willis, 21 La. Ann. 492; J. A. Bel Lumber Co. v. Stout, 134 La. 987, 64 South. 881; Martin v. Texas Co., 150 La. 556, 90 South. 922.

We, therefore, conclude that when one trespasses upon the land of another and wrongfully withdraws and takes oil and gas therefrom, when sued for the value of these minerals, the action is barred, as to the value of such as were taken over a year prior to the institution of the suit, by the prescription of one year.

[5] Prescription, in such a case, begins to run from the time knowledge is received of the wrongful extraction and taking of the oil and gas; the burden being upon the plaintiff, in the suit, to show when he received such knowledge. In this case, plaintiffs had such knowledge more than a year prior to the institution of this suit.

Plaintiffs, however, contend that the petitory action instituted by them, and mentioned in the foregoing part of this opinion, interrupted prescription, and that, as they instituted this suit within a year from the termination of that action, the prescription of one year is not applicable; and they further contend that, until the termination of the petitory action in their favor, their cause of action for the value of the oil and gas did not accrue, and invoke the doctrine that one cannot sue until his cause of action accrues.

[6, 7] That one cannot sue until his cause of action accrues is scarcely debatable. However, prescription begins to run from the moment it does accrue, and unless suit be brought within the prescriptive period, the action is barred, unless for some legal reason prescription should be interrupted or suspended. Prescription, in such cases, is interrupted by petition and citation served on the debtor or by his acknowledgment of the debt. In this case, there was no acknowledgment of the debt. The petitory action, instituted by plaintiffs, did not interrupt prescription on the demand herein, for the value of the oil and gas, for the reason that the petition, in that suit, contained no such demand, but only a mere reservation of the right to sue therefor, which is insufficient.

Plaintiffs, however, contend that the petitory action did interrupt prescription, basing their contention on the theory that prescription does not run against incidental demands, such as those for rents and revenues, during the pendency of a petitory action to establish title to land. They cite, in support of their contention, Woodcock v. Baldwin, 110 La. 270, 34 South. 440, in which it is said that a claim for rents remains inchoate, and does not mature, until title to the land is established. That statement, however, is purely obiter dictum, for an examination of the facts of the case, on pages 276 and 277 of 110 La., on page 442 of 34 South., shows that a petitory action was instituted, coupled with a demand for rents; that the demand for rents was dismissed by the court, as in case of nonsuit; that within a year after the termination of that suit, a suit was instituted for the rents. As the petitory action contained a similar demand, while that action was pending, prescription was interrupted thereon; and, as that demand was reinstated seasonably after the termination of the first suit, prescription did not accrue, and it seems to have been so held, virtually for that reason. The plaintiffs also cite Hernandez v. Montgomery, 2 Mart. (N. S.) 422, which was a suit against the surety on a marshal's bond, in support of their contention that prescription did not run during the pendency of their petitory action, but that case only holds, in effect, that one cannot sue until his cause of action accrues, and until it does accrue, prescription does not run. No legal reason existed, in this case, why plaintiffs should not have sued in the petitory action for the value of the oil and gas that had been extracted from the land up to the time of the filing of that suit, and its pendency did not prevent them from filing suits for the value of oil and gas, extracted during that period. Therefore prescription ran during the pendency of that suit.

[8] Plaintiffs further contend that, in a partition suit, incidental demands, arising between the parties, are not prescribed so long as the action of partition may be maintained, and as their action for the value of the oil and gas extracted is incidental to the partition suit; and, as the action for parti-

tion of the land may be maintained in this instance, that prescription has not run against the demand for the oil and gas. They cite, in support of their contention, article 1304 of the Civil Code, and the cases of Sibley v. Pierson, 125 La. 478, 51 South. 502, and King v. Wartelle, 14 La. Ann. 740. In the case at bar, however, the indebtedness arose before the parties had ever held the property in common, and when Barnhart was in possession of the whole as owner, apparently in good faith, under deeds translative of property, on their face. Under such circumstances, though Barnhart's title to the part, afterwards recovered by plaintiffs, was defective, we do not think the above rule obtains. His possession was adverse, under deeds translative of property, on their face.

We therefore conclude that the plea of prescription of one year, as above stated, is well founded, as to the value of all oil and gas extracted and taken from the land more than one year prior to the service of citation in this suit.

[9] The lower court has correctly fixed the amount thus taken within a year prior to the institution of this suit less the cost of production, allowing plaintiffs one-fifth of the value thereof, which one-fifth amounts to $7,173.26, and has rendered judgment against the Gulf Refining Company accordingly. While both the Gulf Refining Company and Barnhart are sued in solido for the damages arising from the tort, yet we feel that we cannot render judgment in favor of plaintiffs against Barnhart as a codebtor in solido with the Gulf Refining Company, for the reason that Barnhart has been cited only constructively. Therefore, no personal judgment can be rendered against him. Had we found that the demand on the tort was incidental to the partition suit, we might have rendered judgment in rem, to have 'served in effecting the partition; but not having so found, there remains no foundation for such a judgment. Therefore this demand, as against Barnhart, will have to be dismissed as in case of nonsuit, and what we have said relative to prescription applies only as to the Gulf Refining Company and plaintiffs.

[10] In respect to the partition of the land, it was admitted on the trial that it cannot be divided in kind, and hence a partition by licitation is necessary. In effecting the partition, there are three interests that should be considered; that of the plaintiffs, that of Barnhart, and that of the Gulf Refining Company. Each should be protected as far as possible. The three interests should be sold as one whole. In order that each may receive his or their pro rata of the proceeds of the sale, it will be necessary that the appraisement be so made that the pro rata of each may be ascertained. As the lease on the undivided one-fifth interest of the plaintiffs is null and void, the appraisement will have to be made in such a manner that plaintiffs will obtain their one-fifth of the proceeds of the sale free from the lease, and at the same time get none of the proceeds of the sale of the property on the lease that belongs to the Gulf Refining Company, and so that Barnhart will get his four-fifths interest in the proceeds of the sale of the land and his pro rata interest in the royalty from four-fifths of the entire lease, yet nothing further out of the lease, or out of the property thereon, belonging to the Gulf Refining Company. Therefore, it will be necessary to appraise the interest in the land of both plaintiffs and Barnhart separately from the lease and from the property thereon that belongs to the Gulf Refining Company. When this is done, the lease, on the entire tract to be partitioned, should be separately appraised, as if it were valid on the whole, excluding from the appraisement the property on the lease, including the wells. The royalty in the entire lease should also be separately ap-

praised. The wells and other property, attached to the lease, belonging to the Gulf Refining Company, should then be appraised. These appraisements will constitute the appraisement of the whole, and in this way the interest that each may have in the proceeds of the sale of the whole, as a going concern, may be ascertained.

[11] The Gulf Refining Company also asks that should the amount payable out of the proceeds of said sale to it be less than the total value of its rights in said property as appraised, then that such portion of the fund as would be payable to Barnhart be paid to it, up to the total value of its rights as thus fixed. We, however, cannot allow this demand. The amount that those rights may bring at the sale will more correctly represent their value than will the amount fixed by the appraisers.

[12] The Gulf Refining Company also asks that it have judgment against its warrantor, Barnhart, for "such sums as it may be condemned to pay plaintiffs, as well as for the restoration of such sums as have been paid to the said Barnhart for or in virtue of the said lease." The judgment of the court below allows the Gulf Refining Company one-fifth of the royalties paid by it to Barnhart within one year prior to the institution of this suit. That one-fifth represents the portion of the lease from which the Gulf Refining Company was evicted. The judgment appealed from also allows that company one-fifth of the bonus paid by the Gulf Refining Company to Barnhart for the lease. The curator ad hoc for Barnhart has not complained as to the amounts thus allowed, and we find no error in the judgment in that respect. However, these amounts should be paid, in effecting the partition, to the Gulf Refining Company, out of that portion of the proceeds of the sale payable to Barnhart.

[13] In so far as relates to the demand of the Gulf Refining Company for judgment against its warrantor, Barnhart, for all amounts that it may be condemned to pay plaintiffs, the only amount that it has been ordered to thus pay is the sum of $7,175.26, with legal interest thereon. Out of that amount, it will get from Barnhart the royalties paid him, which have just been allowed in approving, in that respect, the judgment of the lower court. In so far as relates to the remainder of the amount that the Gulf Refining Company has been condemned to pay plaintiffs, we do not think that the warranty extends so far. Barnhart, under his warranty, is not called upon to pay the Gulf Refining Company the value of each barrel of oil extracted from the leased premises, in the event of eviction.

In respect to the demand on the appeal bond, the rights of plaintiffs should be reserved, for the reason that it is not before us in such manner that final disposition can be made of it.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by reserving fully to plaintiffs such rights as they may have to sue on said appeal bond, and by dismissing, as of nonsuit, said demand against said Barnhart, for oil and gas extracted and taken from said land, and by providing that the amounts allowed by said judgment against said Barnhart in favor of the Gulf Refining Company be paid to said Gulf Refining Company, in effecting the partition to be ordered herein, out of the proceeds of said partition sale, payable to said Barnhart; that said judgment, in so far as it orders said partition sale, and grants to said Gulf Refining Company the right to remove said property attached to said lease, be annulled and set aside. And it is now ordered, adjudged, and decreed that said property be sold as a whole, in the manner provided by law, to effect said partition; that, before selling said property, it be appraised as in-

dicated, directed, and set out in the premises herein, so that the appraised value of the interests of the plaintiffs herein, of said Barnhart, and of said Gulf Refining Company, may be ascertained in said property, and so that each may receive his or their pro rata of the proceeds of said sale. And it is further ordered and decreed that said judgment, in all other respects, be affirmed; the costs of appeal to be paid by said Barnhart out of the proceeds of said sale.

DAWKINS, J. (dissenting). Plaintiffs bring this suit for the partition of 22 acres of land situated in the oil fields of Caddo parish and for the value of one-fifth of the oil produced therefrom; the one-fifth interest in the land having been held to belong to them by final judgment of this court, in the case of Liles v. Pitts et al., 145 La. 650, 82 South. 735. Petitioners allege that their said undivided fifth interest was wrongfully included in a lease by W. E. Barnhart, their co-owner, to the Gulf Refining Company of Louisiana. Article 5 of the petition further alleges as follows:

"That, acting under said lease, the said Gulf Refining Company of Louisiana entered upon said lots of land, including petitioner's interest therein, and wrongfully took from said land great quantities of oil and gas to an amount in value, as they are informed ·and therefore charge, exceeding one-half million dollars, the part taken from petitioner's one-fifth interest exceeding the sum of $100,000, and the said Barnhart and the said Gulf Refining Company of Louisiana are liable, in solido, to your petitioners for their one-fifth part of the whole quantity of oil and gas, or the proceeds thereof, taken from said land, less their one-fifth part of the cost of production."

Petitioners further allege that they are entitled to have the books of the Gulf Refining Company produced, and accounting made of the operations upon said property. They also make the surety on the appeal bond in the former case of Liles v. Pitts, supra, party defendant, and seek judgment against it in

solido with the other defendants to the amount of said bond.

Barnhart was a nonresident, a curator ad hoc was appointed to represent him, and petitioners prayed for an accounting, for a partition by licitation, and for judgment against said defendant and Gulf Refining Company "for one-fifth of the amount received by said Barnhart and said Gulf Refining Company for oil and gas taken from said premises, less the reasonable cost of producing same," and for judgment against the surety on the former appeal bond for the funds received by Barnhart during the pendency of said appeal, up to the amount of said bond.

Subsequently, by amended petition, judgment in solido against Barnhart and Gulf Refining Company was sought "for one-fifth of the value of all oil and gas taken from said premises, less the reasonable cost of producing the same." And a third amendment claimed interest from judicial demand.

Certain exceptions were filed by Gulf Refining Company, which have become unimportant to the issues of the case. The curator ad hoc for Barnhart excepted to the jurisdiction ratione personæ, and the Surety Company filed exceptions of no cause or right of action and prematurity.

The answers, both of the Refining Company and of the curator ad hoc, admitted that plaintiffs had been decreed the owners of an undivided one-fifth interest in the land, but alleged good faith, and the prescription of one year under article 3536 of the Civil Code as to the oil and gas taken more than one year prior to the filing of the suit.

Gulf Refining Company by amendment sought a separate appraisement of its rights as lessee, and a pro rata distribution of the proceeds of the property according to interests of the several parties. It also attempted to call Barnhart in warranty, and asked to be made whole on its contract with him out of his interest.

Barnhart made no personal appearance, but the curator ad hoc filed a general denial.

Gulf Refining Company filed an account of its operations, which is not attacked; nor is there any dispute as to the other facts. There was judgment ordering the property sold to effect a partition, the proceeds to be paid to Barnhart and plaintiffs in the proportions of four-fifths to the former and one-fifth to the latter. There was also a moneyed judgment against Gulf Refining Company for $7,173.26, with interest from July 20, 1919, as the value of the oil and gas taken from the land, less cost of production, during the period of one year next preceding the filing of this suit and up to August 31, 1919. As to all prior claims the plea of prescription of one year was sustained.

There was further judgment in favor of Gulf Refining Company and against Barnhart for the sum of $1,200, as the value of one-fifth of the royalties paid to him within the said period of one year, and for the further sum of $600, for one-fifth of the bonus paid for the lease.

The Refining Company was also given permission to remove all of its pipe, machinery, etc., except such as was attached to and formed part of the wells on the property.

Both plaintiffs and the Gulf Refining Company have appealed.

### Opinion.

But two issues of law are presented:

(1) The plea of prescription of one year; and

(2) The adjustment sought by the Gulf Refining Company against Barnhart.

### The Plea of Prescription.

Plaintiffs' counsel say that the plea of prescription was improperly sustained for the following reasons:

(1) The demand is not one sounding in damages ex delicto, but for money unduly received, under article 2301 of the Civil Code.

(2) "In a partition suit, incidental demands arising between the parties are only prescribed by the prescription that would prescribe the action itself."

(3) "Prescription does not run against incidental demands for rents and revenues arising during the pendency of a petitory action to establish title to the property from which they arise. The right of action for revenues rests upon the title to be established and does not accrue until judgment is rendered and title established."

The allegations of article 5 of the petition, quoted above, and the prayer, disclosed that the demand is for the net value, after paying cost and expenses of producing and marketing of one-fifth the oil and gas. However, the suit is not a ratification of the lease which Barnhart gave to the Refining Company, in so far as it affects the one-fifth interest of the plaintiffs, nor is it a demand to be paid their part of the consideration flowing to the lessor thereunder, but a claim for one-fifth of the proceeds of the entire production, including that received both by lessor and lessee. To the extent that it exacts of the Refining Company more than the one-eighth which it agreed to pay Barnhart, the suit is a repudiation of the lease.

"He who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it," says the Code, art. 2301. This provision is found in section 3, title V, under the heading "Of Quasi Contracts." Preceding articles define a quasi contract as follows:

"Art. 2293. All persons, such even as are incapable of consent, may, by the quasi contract, resulting from the act of a third person, become either the object or the subject of an obligation, because the use of reason, although necessary on the part of the person whose act forms the quasi contract, is not requisite in those by whom, or in whose favor, the obligations resulting from the act, are contracted."

Article 2294 reads:

"All acts from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due."

See, also, articles 2305, 2311, and 2312.

These articles together with others appearing in this chapter, show the obligation to restore or repay what has been unduly received springs from some one of the relations giving rise to a quasi contract, which relations originate from contracts, either express or implied, or from some special duty expressly imposed by law with respect to a person or thing. It may, though not necessarily, partake of the nature of a tort; but every tort does not give rise to a quasi contract. There must be something more in the way of legal relation than the mere liability to repair a wrong.

In the present case that element existed, though at first unknown to Barnhart, by virtue of the undivided ownership of the plaintiffs in the property leased to the Refining Company. What defendant did was "lawful and purely voluntary," and with the bona fide belief that he owned the whole property. Yet, as was ultimately determined in the former suit, Barnhart owned only four-fifths; the other one-fifth being the property of plaintiffs. That good faith was sufficient under proper possession, continued for ten years, to have vested in him the title to the whole, or even until the filing of the suit claiming ownership by plaintiffs, to give him the fruits and revenues of the property. C. C. arts. 502, 503. However, from the date of that suit, he ceased to be in good faith, in the sense of the Code, and became liable to the plaintiffs for the fruits and revenues of the property, in the proportion of their interest. C. C. art. 503. True, it has been held that oil and gas, or other minerals, do not

fall within the category of fruits and revenues spoken of by the Code. Elder v. Ellerbe, 135 La. 990, 66 South. 337. Yet, even as to fruits and revenues, as well as to claims of one evicted for improvements, prescription does not run during the pendency of a petitory action for the recovery of the fee of the realty. Woodcock v. Baldwin, 110 La. 270, 34 South. 440; Destrehan v. Fazende, 13 La. Ann. 307.

In the present case, the petitory action, claiming title to one-fifth interest in the property, was not one upon a personal liability of the defendants; but the assertion of title to a one-fifth of every part of the realty, including all real rights, such as those which Barnhart had granted to the Refining Company. The bringing of the oil and gas to the surface merely changed its location, and, if it had remained upon the property, the final judgment in the petitory action would have been as complete a recognition of plaintiffs' one-fifth interest therein as it was of the soil, and it would have been, therefore, a proper object of the suit for partition. Did the fact that the other co-owner and his lessee sold or reduced the minerals to money destroy this right which the plaintiffs would otherwise have had? I think the clear purpose and effect of the law, as announced in article 503 of the Code, is that the rights of the parties shall be determined as of the date the suit for title is filed, and the final judgment must relate back to the service of citation in the petitory action. Hence all claims and counterclaims of the parties, incidental to the question of title, were suspended and remained in abeyance until that question was determined. As to the plaintiffs, such claims were included in the assertion of title; on the part of defendant, those for reimbursement for improvements could not arise until his assertion of ownership had failed. The proper proceeding to settle all incidental rights after deter-

mination of the issue of title was in the action of partition. Le Bleu v. North American Land & Timber Co., 46 La. Ann. 1473, 16 South. 501.

My conclusion is that, while the claim for the oil and gas would have prescribed within one year, in the absence of suit on the part of plaintiffs, the petitory action had the effect of interrupting or suspending such prescription until the question of title had been finally settled. It was a judicial assertion of every right in and to the property which a fee-simple title to the undivided interest could vest in the owner, and the judgment in plaintiffs' favor converted the right of action into one for an accounting governed by different rules of prescription.

With respect to the separate appraisement and sale of the lease rights, I know of no way in which that can be done, since plaintiffs are entitled to have the whole property divided, without regard to the rights as between Barnhart and the Refining Company. In other words, plaintiffs are not parties to the lease, and the whole property will have to be sold, if indivisible in kind, free therefrom. The Refining Company does not own an undivided interest in the property, but the lease rights on an undivided interest. As to plaintiffs and Barnhart, the proceeds can and will be divided in proportion to their fractional interest. The lease cannot be valued and sold separately, for it would still operate upon only four-fifths of the land. Plaintiffs being entitled to have the property sold as a whole, it follows that no one can say what part of the price would represent the value of the lease rights upon an undivided four-fifths. For the same reason it would be impossible to say how much of the four-fifths of the proceeds of the entire property represented the fee, or how much the mineral rights. If it were possible to appraise and sell separately the respective interests of plaintiffs and Barnhart, then the

relative rights of the lessor and lessee might be determined. But this would not necessarily produce a partition of the property, for there might be different purchasers of the two interests; and again the sale value of the whole property might be thereby diminished to the detriment of the co-owners, and especially of the plaintiffs who are strangers to the lease.

The distinction between a case like this and that of improvements is that one owning or possessing a privilege upon the latter, enjoys his rights with respect to the entirety of the improvements, and adversely to the owner or owners of the soil; whereas, in the present instance, the Refining Company has only such rights as the owner of an undivided interest could convey, and which as to the other co-owners is wholly void.

For the reasons assigned, I respectfully dissent from the conclusion of the majority.

LAND, J., recused.

ST. PAUL, J. (concurring in part). I respectfully dissent on the point of prescription upon the following grounds:

(1) Where the unlawful act of one person simply damages another without resulting benefit to the wrongdoer, there is a simple tort, and the action for reparation is prescribed by one year. C. C. 3536.

(2) But where the unlawful act of one person not only damages another but also enriches the wrongdoer, there arises an action both ex delicto and quasi ex contractu, and the action to recover the unlawful gain is barred only by the prescription of ten years. See Kohn v. Carrollton, 10 La. Ann. 719; Pickerel v. Fisk, 11 La. Ann. 277; Devot v. Marx, 19 La. Ann. 491; Normand v. Edwards, 23 La. Ann. 142; Gaty, McCune & Co. v. Babers, 32 La. Ann. 1091; McKnight v. Calhoun, 36 La. Ann. 408; Burney v. Ludeling 47 La. Ann. 73, 16 South. 507 (and authori-

ties). See, also, C. C. 2292, 2294, 2301, 2315, 3506, 3509.

(3) And where a person has conferred on him several remedies to enforce an obligation, he has the right to select which of those remedies he will follow, and if he chooses, may waive his action ex delicto and pursue his action quasi ex contractu. See Morgan's La. & Tex. R. R. & S. S. Co. v. Stewart, 119 La. 392, 44 South. 138.

Otherwise I concur.

Rehearing refused.