THOMPSON, J.
This is a suit by the several plaintiffs named in the petition against their co-owners, Mrs. Annie E. Brown and Mrs. Ethel C. Vinson, for a partition by licitation of a small tract of land described in the petition containing 7333/iooo acres. Coupled with the action for partition is a demand ágaifast the Producers’ Oil Company and the Texas Oil Company in solido with the said Mrs. Brown and Mrs> Vinson for the value of one-fifth of the oil and gas'taken from said land by the said oil companies.
The sole question presented in this court is the prescription of one year pleaded against the monetary demand under articles 3536, 3537, Revised Civil Code, as amended by Act 33 of 1902.
The application of this prescription depends upon the interpretation to be placed on the allegations of the petition and the classification oi the cause of action as set out therein. There are no disputed facts in the case, and a brief history antedating and leading up to the institution of this suit will suffice.
The land involved forms a part of the land of which plaintiffs were recognized as owning one-fifth interest in indivisión with the defendants, Mrs. Brown and Mrs. Vinson, by judgment of this court rendered June 30, 1919. Liles v. Pitts, 145 La. 650, 82 South. 735. Prior to the institution of that suit (which was in 1914) L. J. Pitts and W. E. Barnhart were the recorded owners, having acquired by purchase in 1901.
In April, 1913, the said Pitts and Barn-hart and Mrs. Brown and Mrs. Vinson granted an oil and gas lease to the Producers’ Oil Company, and that company later sold to the Texas Oil Company. The property was developed and operated for oil and gas by the two companies named, and it is admitted that between May 13, 1913, and June 30, 1919, the gross production of oil amounted to 525,401 barrels of the value of $561,629.09, and between August, 1916, and June 30, 1919, there was utilized 26,240,153 cubic feet of casing-head gas of the value of $1,049.59. The above values of course do not allow for the cost and expense of development and operation. Neither of the oil companies was made a party to the petitory action, notwithstanding the fact that their leases embracing the whole property, including the interest of plaintiffs, were extant upon the public records, and the plaintiffs had full knowledge thereof and had full knowledge of the development of the land for oil’ from the time of the filing of the former action till the.institution of the present suit.
It is admitted that citation in the instant suit properly addressed to the Texas Oil *390 Company and the Producers’ Oil Company was served on Judge Story, the agent of said companies, on August 5, 1919.
The petition, in so far as pertinent, alleges :
“ * * * That Mrs. Annie E. Brown and Mrs. Ethel C. Vinson made a mineral lease or leases on said land to the Producers’ Oil Company, wrongfully including in'said lease petitioner’s one-fifth interest in said land.”
“That acting under said lease, the said Producers’ Oil Company entered upon said land, including petitioner’s interest therein and wrongfully took from said land great quantities of oil and gas, the amount of which for want of information they are not at present able to fix, but petitioner’s one-fifth part being worth, as they verily believe and therefore charge, more than $50,000, and the said Producers’ Oil Co. and the said Mrs. Brown and the said Mrs. Vinson are liable in solido to petitioners for their one-fifth of the whole quantity of oil and gas or the proceeds thereof, taken from said land, less one-fifth part of the cost of production.”
It is further alleged that when judgment was rendered in suit No. 18013 (the petitory action) Mrs. Brown and Mrs. Vinson took a suspensive appeal and executed a bond with L. J. Pitts as security for the sum of $800, to secure petitioners their part of whatever oil and gas or the proceeds thereof might go into the hands of said Mrs. Brown during the pendency of said appeal, which was finally decided June 30, 1919, and that petitioners are entitled to judgment against _said surety on said bond for so much as is shown to have been received by said Mrs. Brown pending said appeal, not ,to' exceed the amount of said bond.
The prayer of the petition is for judgment against the Texas Oil Company, the Producers’ Oil Company, Mrs. Annie E. Brown, and Mrs. Ethel C. Vinson in solido for one-fifth of the value of all oil and gas takén from said -premises, with legal interest from judicial demand, less the reasonable cost for producing the same, and for judgment against L. J. Pitts for one-fifth of the amount received by Mrs. Brown during the pendency of said appeal between July 3, 1915, and June 30, 1919, not to exceed the sum of $800, the amount of the appeal bond.
The plaintiffs, as owners of an undivided interest in the lands which were under lease to the oil companies, unquestionably had the choice of one of two remedies open to them: One arising ex delicto, as for damages for an offense or quasi offense, the measure of which .damages would be the value of the oil and gas wrongfully extracted from their lands; the other for the money which their co-owners and the lessess had received from the oil and gas obtained from the land and appropriated to their own use, thereby acquiescing in and ratifying the leases made of their interest in the land by their co-owners.
It is a familiar rule of law recognized by jurisprudence that a plaintiff and no one else must choose his remedy and determine the form and character of his action.
“If plaintiff’s money was unduly taken from him as alleged by Mm, he had the choice of two remedies — one ex delicto for damages, and one under the law authorizing him to recover the money itself which had been taken from him. Plaintiff has elected to bring- an action based upon the law. The choice of remedies was not and is not left to the defendant. * * * The choice is left to the plaintiff.” Morgan’s Louisiana & T. R. & S. S. Co. v. Stewart, 119 La. 407, 44 South. 143.
It is contended by plaintiffs that their action here is not one for damages arising out of a tort, but is one for money had and received by the defendants as being due the plaintiffs under the quasi contract imposed by law upon one who receives money, and appropriates it to his own use, that belongs to another. We do not so construe the allegations and prayer of plaintiff’s petition.
While the petition does mention the fact of the lease of the land by their co-owners, plaintiffs do not claim anything under and by virtue of said lease; but, on the contrary, *392 they ignore and repudiate the authority of their co-owners to make the lease in so far as their interest in the property is concerned, and they specially charge a wrongful and illegal act on the part of the oil companies in going on their property under said illegal lease and extracting the oil and gas therefrom and in a manner despoiling petitioners of their property.
They ask for an accounting of the amount of oil and gas so wrongfully taken from their property, not to determine the amount which would be coming to them under the lease, but to the end that they may have and recover judgment for the value of such oil and gas, whatever that value may be shown to be on the market. It is nowhere alleged in the petition, either expressly or inferentially, that plaintiffs' acquiesced in .or ratified the lease, or that they were willing to abide by the lease and accept the price of their interest in the oil and gas received by their co-owners and the oil companies.
The conduct and acts of the defendants throughout the petition are treated as wrongful and illegal, and which amount in law to an offense or quasi offense. There is not the slightest expression that would give color or pretense, or the least similarity, in the acts of the defendants as charged, to any quasi contractual relations with the plaintiffs or the relations of negotiorum gestor.
The allegations in the answer of the defendants of the good faith on their part did not and could not change the character of plaintiffs’ action as propounded in their petition, and convert the same from an action as for a quasi offense to one on a quasi contract.
The allegations and the prayer of the petition in this ease are precisely the same as were made in the case of these same plaintiffs v. Barnhart et al., reported in 152 La. 419, 93 South. 490. The same contention was made in that case as is made here, and the ruling was adverse to the plaintiffs. In that case we reviewed most of the authorities which plaintiffs rely on in this case: Pickerell v. Fisk, 11 La. Ann. 277; Gaty, McCune & Co. v. Babers, 32 La. Ann. 1091; Burney v. Ludeling, 47 La. Ann. 73, 16 South. 507; Morgan’s Louisiana & T. R. & S. S. Co. v. Stewart, 119 La. 392, 44 South. 138. The additional cases cited by the plaintiffs are: Devot & Co. v. Marx, 19 La. Ann. 491; McKnight v. Calhoun and Lane, 36 La. Ann. 40S; Patureau v. Wilbert, 44 La. Ann. 355, 10 South. 782; Kohn v. Carrollton, 10 La. Ann. 719.
An examination of these eases has not served to change the conclusion reached in the Barnhart Case, which we now consider controlling in the present case. It would serve no useful purpose to review the jurisprudence relied on by the plaintiffs.
Whatever may have been said in the cited cases, in refusing, to apply the prescription of one year to the demand as presented in those cases, which would differentiate a suit for damages resulting from a trespass or a tort or a quasi offense from a demand for the value of property wrongfully taken and appropriated, is obviously in conflict with the later and more recent jurisprudence.
In Shields v. Whitlock & Brown, 110 La. 717, 34 South. 748, the court said:
“Finally, it was suggested in the oral argument (and there seemed to be much force in the suggestion) that there ought to be a difference between the application of the prescription relied on as between the claim for damages resulting from the trespass, and the claim for the value of the property belonging to the plaintiff, which the defendants have apr propriated to their own use. We feel very much inclined to the view that there ought to be such a difference, but it does nob seem to be recognized by the law or the jurisprudence of this state.”
In that case the suit was for the value of timber taken from the plaintiff’s land, and for damages for a trespass.
*394 And again in the case of J. A. Bel Lumber Co. v. Stout, 134 La. 987, 64 South. 881, the court answered the same contention of counsel by quoting from Shields v. Whitlock & Brown with unqualified approval. In the last-cited case, the demand was for the value of certain logs found sunken in the Calcasieu river, containing plaintiff’s mark and brand, and which the defendant had acquired by purchase and had appropriated to his own use. The plaintiff there, as here, treated the act of defendant as a tort, and claimed the value of the logs instead of claiming the price which the defendant had received for the logs.
It is sufficient to say, therefore, without citing further authorities, that the rule is now well settled in this state that a suit for the value of property wrongfully taken and appropriated is not distinguishable from an action for damages as for a tort or quasi offense, and is prescribed in one year from the time knowledge is received by the plaintiff of such wrongful appropriation.
This prescription has been applied to a demand by an owner for the value of oil and gas taken from his lands and sold by another in at least two well-considered cases.
In Martin v. Texas Co., 150 La. 556, 90 South. 922, the plaintiff purchased certain lands at tax sale, which sale was confirmed by judgment of court. Prom the date of the tax sale up to the time plaintiff was put in possession of the land, the Alabama Oil Company, the tax debtor, being in possession of the land, pumped oil from a well on the land and sold it to the defendant," the Texas Company. The tax purchaser brought suit against the purchaser of the oil for its value. The plea of prescription of one year was interposed and was sustained, the court holding that a suit to recover the value of oil delivered by the person in possession to another and by the latter resold, so that the recovery of the oil was impossible, is an action ex delicto for the conversion of the oil, not growing out of a contract or quasi contract, and is governed by the prescription of one year.
And again in the case of these same plaintiffs v. Barnhart, referred to supra, the prescription of one year was applied to a demand for the value of oil and gas which had been wrongfully extracted and converted and placed beyond the reach of the true owner. T.he rule of stare decisis is applicable, and must be given potency in this case.
The contention of the plaintiffs’ able counsel that the course of prescription was interrupted by the petitory action filed in 1914, and which resulted in a definitive judgment of this court on June 30, 1919, is fully answered by the decision in the Barnhart Case. It would do no good to travel over the same ground again.
The plaintiffs .are entitled to recover, however, one-fifth of the proceeds of the oil and other products produced and saved from the property described in plaintiffs’ petition within the year immediately preceding the service of the present suit. As this amount is not definitely fixed by the evidence in the record, the case will have to be remanded for that purpose.
In answer to the appeal, the Producers’ Oil Company asks that in the event the plaintiffs recover the one-fifth interest in the oil and gas and other products from said land that there should be deducted the one-fifth of all costs and expenses of drilling and maintaining the wells, as well as one-fifth of the conservation tax paid by the defendant.
And defendants further pray that in the event the land is sold to effect a partition that the Texas Company and the Producers’ Oil Company be permitted to remove all tools, machinery, buildings, and compressing plants, and other things upon said prem *396 ises, utilized for the saving of casing-head gas, and - to salvage all wells, machinery, and other things attached thereto upon the property in controversy, not utilized in producing oil; that such property be excluded from the sale to effect such partition; and that plaintiffs shall be entitled to a credit for one-fifth of the salvage of property from producing- wells abandoned and salvaged.
The defendants are entitled to have the judgment so amended under the agreement made between the parties on the trial in the lower court.
For the reasons assigned, it is ordered and decreed that the judgment appealed from, in so far as it orders a sale of the land to effect a partition, be and the same is hereby amended so as to reserve to the Producers’ Oil Company the right to remove all tools, machinery, buildings, .and 'compressing plants, and other things upon said land, utilized for the saving of casing-head gas, and to salvage all wells, machinery, and other things attached thereto upon the property in controversy, not utilized in producing oil, and that such property be excluded from the sale to effect such partition, and that plaintiffs shall be entitled to a credit for one-fifth of the salvage of property from producing wells abandoned and salvaged.
It is further ordered and decreed that, in so far as the judgment sustains the plea of prescription as against the one-fifth interest in the oil and gas taken from the land within the year immediately preceding the service of this suit, the same is annulled and set aside and the plea of prescription is overruled to that extent, and the case is remanded to the lower court to ascertain the amount of oil and gas so taken by the defendants, subject to the credits and deductions as agreed on between the parties as appears in the admission on the trial in the lower court.
In all other respects and except as amended the judgment appealed from is affirmed. The cost of appeal to be paid by the Producers’ Oil Company and the costs incident to the suit for partition to be paid by the owners in proportion to their respective interest in the property to be partitioned, and all other costs to be fixed by the lower court.