160 So.2d 433 (1964)
Marie Baucum SCOTT, Plaintiff-Appellant,
v.
HUNT OIL COMPANY et al., Defendants-Appellees.
No. 10124.
Court of Appeal of Louisiana, Second Circuit.
January 9, 1964.
Rehearing Denied February 13, 1964.
Writ Refused March 30, 1964.
*434 Marie Baucum Scott, in pro. per.
Goff & Caskey, Arcadia, John S. Hunt, Monroe, for Hunt Oil Co., defendant-appellee.
Before HARDY, GLADNEY, and AYRES, JJ.
AYRES, Judge.
Plaintiff claims the ownership of an undivided 1/32 mineral interest in a described tract of land situated in Claiborne Parish, Louisiana. She seeks, by this action, a judgment recognizing her interest as a mineral owner and for an accounting of her alleged working interest in the oil, gas, and minerals produced therefrom.
This matter was heretofore before this court (La.App., 152 So.2d 599). As to the defendant, Hunt Oil Company, an exception of no cause of action was overruled and the cause remanded for further proceedings.
Pursuant to the remand, defendant, Hunt Oil Company, which is the only remaining party defendant, urged a plea of 10 years' prescription, liberandi causa, under LSA-C.C. Arts. 789 and 3546, as to the particular servitude asserted by plaintiff. In an answer, this defendant further pleaded that plaintiff's rights were only those of a royalty interest. Such interest was alleged and shown to have been paid or disbursed for plaintiff's account.
Upon trial of the merits of the case, the plea of prescription was sustained, as to a specified 280 acres upon which defendant retained a lease, as was an exception of no right of action directed primarily to plaintiff's demands for an accounting. As observed in our former opinion, the question is whether plaintiff has a mineral servitude on the lands, and, therefore, a working interest in the well from which production is had, as she claims, or a mere royalty right as asserted by the defendant.
To resolve the issues thus presented, a resume of the facts material to the question is deemed a prerequisite to a discussion of the questions involved. In chronological order, we observe from the record that:
W. P. Baucum, plaintiff's father, under date of November 21, 1936, sold to S. A. Ware a tract of 1182 acres, a portion of which is herein concerned, reserving unto himself ½ of the minerals;
S. A. Ware, on November 21, 1937, reconveyed to W. P. Baucum the ½ mineral interest which he had acquired in the aforesaid sale;
W. P. Baucum, under date of June 25, 1938, sold, to Sherman Crump, a ½ mineral interest in the aforesaid tract; W. P. Baucum died intestate on September 16, 1938, leaving a widow and eight heirs, three of whom were minors, the youngest of whom attained the age of majority on December 2, 1946;
S. A. Ware was adjudicated a bankrupt in 1940 and, pursuant to the bankruptcy proceedings, the aforesaid tract was sold by deed of July 5, 1940, to Leroy Ware;
Leroy Ware, under date of May 8, 1942, acquired, from Sherman Crump, the ½ of the minerals theretofore owned by him;
Leroy Ware granted an oil, gas, and mineral lease to Hunt Oil Company, covering 500 acres of the aforesaid tract, on June 5, 1945, for a primary term of five years. Production had in 1950 from a well located on the SE ¼ and the SW ¼, Sec. 7, T. 23 N., R. 6 *435 W., a portion of said tract, has ever continued therefrom; and
Under date of July 31, 1947, Leroy Ware conveyed to S. A. Ware an undivided ½ interest in the 1182-acre tract of land.
After litigation was instituted between the Wares and the Baucums, and while such litigation was pending on appeal in the Supreme Court, a compromise as to their respective rights in and to the minerals was entered into by all the parties thereto, as shown by an instrument effective and as recorded on December 11, 1953. As heretofore observed, plaintiff's claim is predicated upon either the mineral reservation contained in the deed from W. P. Baucum to S. A. Ware on November 21, 1936, or upon the mineral sale from Ware to Baucum dated November 21, 1937.
The principle is well established in the jurisprudence of this State that a sale or reservation of the oil, gas, and other minerals in a tract of land constitutes a sale or reservation of a real right or a servitude to go upon the land and explore therefor, and to own such oil, gas, or minerals as may be produced. Such a real right or servitude is lost by the prescription of 10 years, liberandi causa, if the owner of the right, not being the owner of the land itself, fails to exercise the servitude for a period of 10 years. Palmer Corporation of Louisiana et al. v. Moore, 171 La. 774, 132 So. 229, 230, and the authorities therein cited.
The burden of proof is upon the owner of the servitude to establish that he or someone in his name has made timely use of the servitude to prevent the tolling or the accrual of prescription. LSA-C.C. Art. 804, in this regard, declares as follows:
"When the prescription of non-usage is opposed to the owner of the estate to whom the servitude is due, it is incumbent on him to prove that he, or some person in his name, has made use of this servitude as appertaining to his estate during the time necessary to prevent the establishment of the prescription."
Plaintiff contends, in her pleadings, that her mineral servitude was preserved from extinction by the minority of at least one of her coowners and by an acknowledgment executed by Ware on June 18, 1945. No proof was made of these alleged facts; nor was any mention made of them in either brief or oral argument. Hence they may be considered abandoned. The minority of a coowner would not affect the running of prescription against plaintiff, a major (Act No. 232 of 1944, as amended by Act 510 of 1950LSA-R.S. 9:5805).
The proof offered, however, clearly establishes there was no drilling on the land or an exercise otherwise of the rights under the servitude for a period of time exceeding 10 years, following even the date of the mineral sale from Ware to Baucum dated November 21, 1937.
When a mineral servitude has become extinct by prescription, it cannot be resurrected; it can only be recreated by a new servitude. Delta Refining Co. v. Bankhead et al., 225 La. 422, 73 So.2d 302, 306; Wise v. Watkins, 222 La. 493, 62 So.2d 653; Haynes v. King et al., 219 La. 160, 52 So.2d 531.
Therefore, the conclusion is inescapable that the servitude, whether arising from the reservation made by W. P. Baucum in the sale to Ware or from the sale from Ware to Baucum, was extinguished by the prescription of 10 years, liberandi causa, and, accordingly, the plea of prescription was properly sustained.
We may observe, however, in passing, that whatever rights plaintiff has or may have are derived solely from the compromise and correction deed executed by the Wares and by the Baucums in compromise and settlement of the litigation then pending between them. This instrument, *436 after correcting a description of a portion of the property conveyed by Baucum to Ware on November 21, 1936, recites:
"BAUCUMS do hereby release, relinquish, quitclaim and convey to WARES all their rights and claims in and to fifteen sixty-fourths (15/64) of the oil, gas and other minerals in and under the above described lands and WARES do recognize BAUCUMS as the owners of fifteen sixty-fourths (15/64) of such oil, gas and other minerals, it being the intention of the parties that under the terms of this compromise the disputed fifteen thirty-seconds (15/32) mineral interest shall be owned one-half (½) by BAUCUMS and one-half (½) by WARES." (Emphasis supplied.)
The instrument apportions the mineral interest acquired by the Baucums; plaintiff's interest is fixed at a 1/32. Noted, also, in the instrument was the fact that production of oil and gas had been obtained from wells situated on the property concerned and that payment of royalties had been withheld pending settlement of the dispute as to the ownership of the minerals involved. In that regard, the instrument declared:
"It is recognized that there has been production of oil and gas from wells situated on the above mentioned property and that payment for said production to the parties hereto has been with-held pending the settlement of the dispute as to the ownership of the fifteen thirty-seconds (15/32) mineral interest which is involved herein. The parties hereto do specifically direct that payment for their respective interests be made in accordance with the ownership as agreed herein, both as to past and future production, and, in this connection, any purchaser of oil, gas or other liquid hydrocarbons is specifically directed to make payment of amounts accumulated for past production in accordance with the ownership as set forth herein."
The aforesaid agreement of compromise was entered into and filed for record long after defendant's lease was of record. Hence, plaintiff's rights, under such instrument, are subject to defendant's prior recorded lease. In fact, as pointed out, the priority of the lease was recognized by the parties to the compromise by directing payments to be made from production accrued and to be accrued from said lease.
Defendant, Hunt Oil Company, does not contest plaintiff's rights as a royalty owner; her rights as such are conceded. Payment of accrued royalty was paid to plaintiff, and royalty as it accrues is now being paid to her or for her account.
Therefore, the judgment holding that plaintiff's mineral interest is subject to defendant's prior recorded mineral lease, and that plaintiff has neither a working interest in the well nor a right to an accounting, based on production, drilling, and operating expenses, or for damages, is correct. Hence, she was without a right of action as concerns the aforesaid demands.
The judgment appealed is accordingly affirmed at plaintiff-appellant's cost.
Affirmed.