HAMLIN, Justice.
In the exercise of our supervisory jurisdiction, we directed certiorari to the Court of Appeal, Second Circuit, for review of its judgment which overruled peremptory exceptions filed by the defendants, remanded the matter to the district court for proceedings not inconsistent with its opinion and reversed the judgment of the district court. Art. VII, Sec. 11, La.Const. of 1921; 223 So.2d 218; 254 La. 454, 223 So.2d 867. The matter was tried in the district court on exceptions of no cause or right of action, which court sustained the exception of no cause of action filed by the defendants'and dismissed plaintiffs’ suit at-their costs.
*1048 Under the circumstances of this case, we accept as true the well-pleaded allegations of fact contained in plaintiffs’ petitions. Matassa v. Bel, 246 La. 294, 164 So.2d 332; Touchet v. St. Landry Parish Police Jury, La.App., 216 So.2d 385. Cf. Williams v. Red Barn Chemicals, Inc., La.App, 188 So.2d 78.
On October 16, 1967, Ross B. Nelson, Jr., John G. Nelson and Laura May Nelson Gilmer, descendants of Ross B. Nelson, Sr., filed suit against the defendants, alleging that they were the owners of one-half of all of the minerals under certain described property in Red River Parish, Louisiana; they prayed for judgment recognizing their ownership and ordering an accounting and a return of monies received by the defendants under certain mineral leases and oil and gas operations. Peremptory exceptions of no cause or right of action and the dilatory exception of non-joinder of necessary parties were filed by the defendants; plaintiffs amended their petition so as to name E. Kenneth Nelson and Edwin R. Nelson as defendants; thereafter, on March 18, 1968, these defendants, descendants of Raymond A. Nelson, filed an original petition, wherein they made the same allegations and demands as the descendants of Ross B. Nelson, Sr.
By credit deed dated October 17, 1912, Ross B. Nelson, Sr. originally acquired the fee title to the land under which the contested minerals lie, including the surface and all minerals; also by credit deed, dated September 26, 1917, Ross B. Nelson, Sr. conveyed the property to Raymond A. Nelson, reserving unto himself an undivided one-half interest in and to the minerals. The Court of Appeal correctly found:
“Plaintiffs are the heirs of Raymond and Ross B. Nelson, Sr. who once owned all the minerals under the land involved. There were mineral reservations prior to 1920 and continuous production of hydrocarbons until the year 1943. Thereafter a dry hole was abandoned on January 2, 1952; since then the plaintiffs have taken no steps toward good faith exploration or production of minerals. The defendants [allegedly the landowners] executed leases covering the properties involved on December 18, 1957. Two wells were drilled under these ‘top-leases.’ One well was commenced May 1, 1959, produced 1181 barrels of oil and was plugged and abandoned on May 12, 1964. The other well was completed as a dry hole on August 22, 1959. The exploration was done by the assignees of leases executed by defendants and their mother to H. M. Doss.”
Plaintiffs alleged in their petition that they adopted, confirmed, and ratified the leases executed by the defendants and their mother, their minerals being subjected to all the terms and. conditions of the leases insofar as each lease purported to cover any or all of plaintiffs’ minerals; they *1050 further alleged that the drilling and production of oil under and pursuant to the oil and gas leases described constituted a full and complete user of all of plaintiffs’ minerals.
In peremptory exceptions filed to the petition of the Raymond A. Nelson heirs, said exceptions being in substance the same as those filed to the petition of the Ross B. Nelson, Sr. heirs, defendants averred:
“The petition discloses no cause or right of action against exceptors for the following reasons:
“(a) Plaintiffs’ petition does not disclose that they or their ancestors in title have exercised their servitude of mineral ownership or the right to search, so as to prevent the running of prescription liberandi causa.
“(b) For the interruption of the running of prescription liberandi causa plaintiffs rely on three leases executed by defendants and wells drilled thereunder as alleged in Articles 5 through 10 of their petition. These allegations show on their face that plaintiffs did not exercise the servitudes.
“(c) The exercise of a servitude by the landowner (the defendants) does not interrupt the running of prescription liberandi causa against the party claiming the servitude (the plaintiffs).
“(d) The drilling of a well and production of oil by the landowners, through their lessees, .where the landowners are not the owners of any mineral interest, does not interrupt the running of prescription liberandi causa so as to prevent the outstanding minerals from reverting to the landowners for nonuse in ten years.”
The trial court did not render reasons for judgment.
The Court of Appeal found that the case of Sample v. Louisiana Oil Refining Corporation et al., 162 La. 941, 111 So. 336, was not controlling of the issues in the present case. It reasoned that, “If, then, the mineral owner can adopt unauthorized production, and take advantage of the unauthorized user of the servitude to interrupt prescription, at a time during which the minerals are being extracted, what reason is there to prevent his adoption of the unauthorized user in order to interrupt prescription, when that user is discovered by him years after it has terminated?” 223 So.2d, at p. 222. See, Nabors, 26 Tul.L. Rev. 23, 28. The Court further reasoned that to hold that production in the instant case did not interrupt prescription would be to encourage a type of lawless exploration and production, and to reward success in preventing discovery by the mineral owner until the production is sold and the well is capped and abandoned. It held that the drilling and exploration by the assignees of defendants’ lessees ' effectively *1052 interrupted the running of liberative prescription against plaintiffs’ mineral servitude.
In this Court, defendants assign the following errors to the judgment of the Court of Appeal:
1.The Court erred in not following the decision of the Supreme Court as rendered in Sample v. Louisiana Oil Refining Corporation et al., 162 La. 941, 111 So. 336 (1927), and in effect overruling that decision.
2. The Court erred in failing to properly interpret and follow the clear meaning and import of Louisiana Civil Code Articles 783, 789, 790, 793, 794, 804, 3529 and 3546.[1]
3. The Court erred in failing to follow and in effect overruling the long line of decisions of all of the courts of Louisiana which hold that no act on the part of a landowner will have the effect of interrupting prescription and extending the life of a mineral interest unless *1054 it is shown that there was a clear intention on the part of the landowner to achieve that result. Barnsdall Oil Co. v. Miller, 224 La. 216, 69 So.2d 21 (1953); Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50 (1956); Elkins v. Roseberry, 233 La. 59, 96 So.2d 41 (1957); Achee v. Cailouet, 197 La. 313, 1 So.2d 530 (1941); Williams v. Arkansas Louisiana Gas Co., 193 So.2d 78 (La.App.2d Cir. 1966); LeBleu v. LeBleu, La.App., 206 So.2d 551.
4. The Court of Appeal erred in holding that the owner of a mineral servitude who has not exercised the servitude in ten years, can, years after the ten years is up, and years after drilling and production by the landowner, adopt the drilling and production of the landowner as his own and thus use it as an interruption of the running of prescription.
Plaintiffs urge that the judgment of the Court of Appeal should be affirmed, except insofar as it rej ected their rights to recover leasehold considerations directly from the defendants. They argue that, “Where a mineral servitude is owned by third persons, and prior to the prescription of said mineral servitude the landowner executes a lease purporting to cover and effect such outstanding minerals, and pursuant to such lease drilling is conducted and production obtained prior to the expiration of the mineral servitude, and such production continues beyond the date upon which the mineral servitude would have prescribed, had there been no drilling, and where, subsequent to the date such mineral servitude would have prescribed, had there been no such drilling the owners of the outstanding minerals bring suit to have their mineral ownership recognized and in the pleadings adopt, ratify and confirm the lease executed by the landowners as having been done on their behalf, there arises a quasi-contractual relationship between the mineral servitude owners and the landowners, with the result that the execution of the lease by the landowners becomes an act performed on behalf of the mineral owners with retroactive effect to the date of execution of the lease with the result that (a) the mineral owners are entitled to all bonuses, royalties, delay rentals and other considerations attributable to their share of the minerals provided for in the lease which accrue both before and subsequent to the date the mineral servitude would otherwise have prescribed and further (b) the drilling of the well under the lease executed by the landowners constituted a user of the mineral servitude owned by the mineral owners which drilling and subsequent production thereto interrupted prescription on the mineral servitude until such time as production ceased. Louisiana Civil Code, Articles 794, *1056 2292-2295;[2] 2301, 2312, 2313. Liles v. Barnhart, 152 La. 419, 93 So. 490 (1922). Liles v. Producers Oil Co., 155 La. 385, 99 So. 339 (1924).”
We do not find the cases of Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765 (1921-1922), and Sample v. Louisiana Oil Refining Corporation et al., 162 La. 941, 111 So. 336 (1927), apposite to the present matter; however, because of the emphasis which has been placed on these cases, we shall briefly enumerate their facts and the judgments which ensued.
On February 15, 1904, S. G. Sample sold to Louisiana Coal & Lumber Company all of the minerals under certain described land; on April 15, 1905, he sold the land to Hill Moseley, reserving the minerals to himself, his heirs and assigns. On January 22, 1911, Louisiana Coal & Lumber Company, acting through S. G. Sample and H. T. Liverman, its liquidating commissioners, sold the minerals to J. M. Nabors. On August 11, 1911, Nabors sold the minerals to Nabors Oil & Gas Company. On May 6, 1914, Nabors Oil & Gas Company entered into a lease contract with Louisiana Oil Refining Company. Gas was produced in paying quantities prior to July 24, 1914, and thereafter oil was produced. On July 24, 1914, Louisiana Oil Refining Company secured a lease from the widow and heirs of Hill Moseley. On February 20, 1915, Louisiana Oil Refining Company sold its leases to Southwestern Gas & Electric Company. On May 16, 1916, Nabors Oil & Gas Company filed suit and prayed that its lease to Louisiana Oil Refining Company be decreed void, for noncompliance by said Company with the conditions of the lease; it also prayed for rentals from Southwestern Gas & Electric Company. This Court denied the demands of Nabors Oil & Gas Company, which had derived its *1058 rights from J. M. Nabors, who had derived his rights from Louisiana Coal & Lumber Company, which had purchased the minerals from S. G. Sample on February 15, 1905. In the Nabors case, the Court stated:
“Of course, the reservation made by S. G. Sample, in his sale of the land to Hill Moseley, could not have prejudiced the mineral rights which plaintiff’s author in title had already acquired from Sample. If those rights had been exercised within ten years from the date when they were acquired by plaintiff’s author in title from S. G. Sample, the reservation which he afterwards made, in his sale of the land to Hill Moseley, would not have availed him. But the reservation made by Sample in his sale to Moseley did not prolong the period of prescription which was running against the rights which Sample had already conveyed to plaintiff’s author in title. When those rights were lost by prescription, the reservation which Sample had made in his own favor, and in favor of his heirs and assigns, was yet in effect. That reservation has not been asserted and is not in contest in this case.” 91 So., at p. 777.
Thereafter, S. G. Sample brought suit against Louisiana Oil Refining Corporation and Southwestern Gas & Electric Company for the cancellation and forfeiture of the lease from Nabors Oil & Gas Company to Louisiana Oil Refining Company and for recognition of plaintiff’s exclusive right to exploit for, mine, reduce to possession, and appropriate all minerals underlying the described lands. This Court held :
“The mere fact that Mr. Sample was a stockholder in the Nabors Company did not make him a party to the contract of May 6, 1914, and we do not think he has shown any rights under that contract. It was not a contract containing a stipulation pour autrui, and he was not a party to it, and can claim no rights under it in any way. The exception of no cause of action is therefore good as to his claim for $1,800, and as to his claim to have the contract annulled for failure to develop. * * * If he was no party to that contract, the development under the contract was not development by him, and his mineral rights prescribed on April 15, 1915. The plea of prescription of 10 years is good on this score for nonuser of a servitude.” Ill So., at p. 337.
The instant suit is not one for the cancellation of a lease; it is one brought under quasi contract — not one in tort. Plaintiffs have not become associated with corporations and have not negotiated for the minerals as did the parties in the Nabors and Sample cases, supra. The minerals have been in the Nelson family since 1912 and were owned in indivisión by plaintiffs’ ancestors in 1917.
*1060 In 1957, when the present leases were entered into by defendants, prescription had not run against plaintiffs, and, as stated supra, there had been development by plaintiffs up until January 2, 1952. When defendants executed mineral leases, plaintiffs were the rightful owners of the minerals. We therefore do not find that Sample v. Louisiana Oil Refining Corporation, et al., supra, is controlling; neither do we find that the Court of Appeal overruled that decision.[3] We conclude that the Sample case stands on its own involved facts and circumstances.
We do not find that the Court of Appeal herein failed to properly interpret and follow the articles of the Revised Civil Code treating of prescription and servitudes. Likewise, we do not find that the Court in effect overruled a long line of decisions submitted by defendants in support of their contentions.
A mineral reservation is in the nature of a servitude and is prescribed by nonuser for ten years. Achee v. Caillouet, 197 La. 313, 1 So.2d 530. “The principle is well established in the jurisprudence of this State that a sale or reservation of the oil, gas, and other minerals in a tract of land constitutes a sale or reservation of a real right or a servitude to go upon the land and explore therefor, and to own such oil, gas, or minerals as may be produced. Such a real right or servitude is lost by the prescription of 10 years, liberandi causa, if the owner of the right, not being the owner of the land itself, fails to exercise the servitude for a period of 10 years. Palmer Corporation of Louisiana et al. v. Moore, 171 La. 774, 132 So. 229, 230, and the authorities therein cited.” Scott v. Hunt Oil Company, La.App., 160 So.2d 433, 435. It is unimportant whether production was in paying quantities so long as there was some production or use of the servitude. Mays v. Hansbro, 222 La. 557, 64 So.2d 232. See, Gulf Oil Corporation v. Clement, 239 La. 144, 118 So.2d 361; Crown Central Petroleum Corporation v. Barousse, 238 La. 1013, 117 So.2d 575. Cf. Lee v. Goodwin, 174 So.2d 651; 248 La. 149, 177 So.2d 118; Pan American Petroleum Corp. v. O’Bier, La. *1062 App., 201 So.2d 280. “The settled rule is that no act on the part of a landowner will have the effect of interrupting prescription and extending the life of a mineral interest unless it is shown that there was a clear intention on the part of the landowner to achieve that result. * * * ” LeBleu v. LeBleu, La.App., 206 So.2d 551, 557 (1967).
Herein, we do not have posed the sole question of whether the execution of a mineral lease by the landowners interrupted the prescription running against the owners of the minerals; we are confronted with the question of whether the execution of a mineral lease between the landowners and their lessees and production under such lease before the termination of ten years of nonuser by the mineral owners interrupted the prescription running against such mineral owners. The cases of Barnsdall Oil Co. v. Miller, 224 La. 216, 69 So.2d 21; Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50; Achee v. Caillouet, 197 La. 313, 1 So.2d 530; Elkins v. Roseberry, 233 La. 59, 96 So.2d 41; Williams v. Arkansas Louisiana Gas Company, La.App., 193 So.2d 78; and LeBleu v. LeBleu, La.App., 206 So.2d 551, are not apposite. They involved questions of leases and their effects upon prescription; they did not involve the question of leases and accompanying production within the prescriptive period. We agree with the Court of Appeal that, “Therefore, if the question before us is in reality whether the landowner, who owns no minerals, can interrupt prescription by the production of minerals, it is a new problem in the mineral jurisprudence of our state.” 223 So.2d, at p. 222.
When the Youngs executed the instant mineral leases, they were landowners whose land was subject to a mineral reservation; they had no legal right to execute the leases. However, plaintiffs do not assert any wrongdoing on the part of defendants and have not sued in tort. Schouest v. Texas Crude Oil Co., La.App., 141 So. 2d 155; Liles v. Barnhart, 152 La. 419, 93 So. 490; Liles v. Producers’ Oil Co., 155 La. 385, 99 So. 339.
Plaintiffs’ silence, under the facts of this case, indicates that they acquiesced in the actions of the defendants in executing the leases. There is nothing in the record to indicate otherwise. Applying a proper construction, we find that plaintiffs, under the facts presented in their petitions and the circumstances which they allege, have clearly and unequivocally shown an intention to ratify the leases executed by defendants. Williams v. Arkansas Louisiana Gas Company, La.App., 193 So.2d 78. It follows that the voluntary acts of defendants were for the benefit of the plaintiffs; they transacted the business of other persons. Thus a quasi contract came into existence between plaintiffs and defendants. Since production resulted from the leases executed by defendants, we find that the prescription *1064 of nonuser running against plaintiffs was interrupted. Plaintiffs’ petitions state a cause of action; they are entitled to a decree adjudging them the owners of the oil, gas, and other minerals in and under the described property in Red River Parish, Louisiana.
As stated supra, the trial court sustained the exceptions of no cause of action filed by defendants. The Court of Appeal found that although plaintiffs were entitled to the ownership of the minerals, no authority had been suggested by plaintiffs to support their demands for lease bonus monies and rentals. The Court said:
“ * * * The demand is made, not against one who trespasses and produces, but against the landowner, who has received monies under a ‘top-lease,’ and has received money for a share of production under such a lease. That the producer might be liable to plaintiffs, except for prescription, is not questioned. The producer is not before us.” 223 So.2d, at p. 223.
We do not have the instant leases before us; we do not know the cost of production or who bore such cost; we do not know the percentages of distribution. However, under our findings of quasi contract — the defendants negotiated plaintiffs’ business — we conclude that defendants are liable to plaintiffs for an accounting and for payment of any net amounts to which plaintiffs are entitled. Cf. Succession of Jones, La.App., 136 So.2d 720. Such a determination will have to be made in the district court.
For the reasons assigned, the judgment of the Court of Appeal is affirmed insofar as it overruled the peremptory exceptions filed by defendants and decreed plaintiffs the owners of the oil, gas, and other minerals in and under the following described property:
That portion of the Northeast Quarter (NE/4) of Section 6, Township 12, North Range 10 West, lying North and East of the Texas and Pacific Railroad right-of-way; the Northeast Quarter (NE/4), the East Half of the East Half of the Northwest Quarter (E/2 of E/2 of NW/4), and that portion of the South Half (S/2) of the section, lying North and East of the railroad right-of-way; all in Section 31; Northwest Quarter (NW/4) of Section 32, Township 13 North, Range 10 West, all in Red River Parish, Louisiana.
The judgment is reversed and set aside insofar as it denied plaintiffs’ claim for an accounting in this matter. The case is remanded to the district court for proceedings not inconsistent with this opinion. Defendants are cast with the costs of the Court of Appeal and this Court; the disposition of all other costs is to await final adjudication of this case.
*1066 SANDERS, J., concurs in the result.
McCALEB, J., concurs with written reasons.
BARHAM, J., dissents with written reasons.

. “Servitudes are extinguished:
“2. By prescription resulting from non-usage of the servitude during the time required to produce its extinction.
“ * * * ” Art. 783.
“A right to servitude is extinguished by the non-usage of the same during ten years.” Art. 789.
“The time of prescription for non-usage begins for - discontinuous servitudes, from the day they ceased to be used; for continuous servitudes, from the day any act contrary to the servitude has been committed.” Art. 790.
“To preserve the right of servitude and prevent prescription from running against it, it is not necessary that it should be exercised exclusively by the owner to whom it is due, or by those who use his rights, or who represent him directly, as the usufructuary, the lessee or tenant, the attorney in fact or agent. It suffices if the servitude has been exercised by workmen employed by the owner, or by his friends, or those who come to see him.” Art. 793.
“The servitude is preserved to the owner of the estate to which it is due, by the use which any one, even a stranger, makes of it, provided it be used as appertaining to the estate.
Thus the servitude is preserved to the owner by the use which a possessor in bad faith, who is in possession of the estate to whom [which] it is due, makes of the servitude.
But if any one passes over the land of another, considering the way as public, or as belonging to another estate, the owner of the estate to whom the servitude is due, can not avail himself of the use thus made of the servitude to protect himself against the prescription which may have been acquired against himself.” Art. 794.
“When the prescription of non-usage is opposed to the owner of the estate to whom the servitude is due, it is incumbent on him to prove that he, or some person in his name, has made use of this servitude as appertaining to his estate during the time necessary to prevent the establishment of the prescription.” Art. 804.
“This prescription has also the effect of releasing the owner of an estate from every species of real rights, to which the property may have been subject, if the person in possession of the right has not exercised it during the time required by law.” Art. 3529, Liberative prescription of real rights.
“The rights of usufruct, use and habitation and servitudes are lost by non-use for ten years.” Art. 3546.

. “Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place.
“Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
“ * * * ” Art. 2292.
“Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a recriprocal obligation between the parties.” Art. 2293.
“All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to-wit: The transaction of another’s business, and the payment of a thing not due.” Art. 2294.
“When a man undertakes, of his own accord, to manage the affairs of another, whether the owner be acquainted .with the undertaking or ignorant of it, the person assuming the agency contracts the tacit engagement to continue it and to complete it, until the owner shall be in a condition to attend to it himself; he assumes also the payment of the expenses attending the business.
“He incurs all the obligations which would result from an express' agency with which he might have been invested by the proprietors.” Art. 2295.

. The Court of Appeal stated: “Only Sample v. Louisiana Oil Refining Corp. (supra) prevents an easy disposition of this issue by resort to the plain words of Civil Code Article 794. Two significant observations about Sample can be made: (1) Sample was making the same demand for himself and for Nabors Oil & Gas Co., in which ho was a shareholder, that Nabors Oil & Gas Co. had made and lost five yeai-s earlier; and (2) Sample’s claimed mineral servitude was in reality a ‘reversionary interest’ only, since he had sold all the minerals in February, 1904, then had sold the land in April, 1905, reserving all the minerals. The substance of the Sample case disappeared when later jurisprudence disposed of the ‘reversionary interest’ claim. Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610 (1950) ; Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954). Under those circumstances, Sample should not control the issues in the ease before us.”