488 So.2d 1099 (1986)
PRODUCERS OIL & GAS COMPANY, Plaintiff-Appellant,
v.
Dale G. NIX, et al., Defendants-Appellees.
No. 17745-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
Rehearing Denied June 5, 1986.
*1100 Tucker, Jeter & Jackson by H.M. Holder, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by J. William Fleming, Shreveport, for defendants-appellees TXO Production Corp. and Phillips Pet. Co.
Gene M. Griswold, Shreveport, for defendants-appellees R.S. Properties, Inc. and George R. Schurman.
Peters, Ward, Bright & Hennessy by Frank Bright, Shreveport, for exceptors, Dale G. Nix and Marjorie Currie Lacour.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Producers Oil and Gas filed this suit to be recognized as owner of a one-sixth mineral interest covering a tract in Caddo Parish. It also sought to be recognized as owner of an executive privilege for another one-sixth. The defendants are the landowners and their lessees. The landowners also owned some mineral interests, but they are neither alleged nor proved to be co-owners of the servitude on which Producers' claim is based. Several defendants filed exceptions of no cause of action, which the trial court sustained. Producers has appealed. For the reasons expressed, we affirm.
The salient details of the complex title history are as follows. Producers' ancestor in title acquired the mineral servitude on which it bases its claim in 1941. In 1946, Phillips Petroleum drilled a well that produced until 1972. Meanwhile, Producers acquired its servitude title in 1965. Then, in 1979, defendant landowner Marjorie C. LaCour granted a lease to defendant Nix, who entered the tract, reworked a number of wells and restored them to production. Producers filed the instant suit in April 1984.
A mineral servitude is extinguished by prescription resulting from nonuse for ten years. LSA-R.S. 31:27. Since the last use, according to the defendants, of the servitude was 1972, prescription would have run in 1982. Ownership of the minerals would then vest in the surface owners despite the earlier mineral deeds. Prescription of nonuse is interrupted, however, by good faith operations for the discovery and production of minerals. LSA-R.S. 31:29. It is apparently conceded that Nix's work qualifies as good faith operations sufficient to interrupt prescription. LSA-R.S. 31:39. An additional qualification is that in order to interrupt prescription, the use must be made by the owner of the servitude, his representative or employee, or some other person acting on his behalf. LSA-R.S. 31:42.
The issue is whether Nix, who was acting only on behalf of a landowner, could interrupt prescription as to the servitude owner. Producers argues that it should benefit by the actions of Nix, with whom it had absolutely no connection. If Producers' theory is correct, then its mineral servitude is still intact.
In support of its position, Producers relies on Nelson v. Young, 255 La. 1043, 234 So.2d 54 (1971). Nelson presented facts that are remarkably similar to those of the instant case. In Nelson, drilling operations had ceased in 1952, thus beginning prescription. In 1957, the surface owner granted leases even though he did not own *1101 the minerals. The lessee drilled a producing well in 1959; it produced until 1964. In 1967, the servitude title owners sued to be declared owners of the mineral rights. The trial court dismissed the suit. We reversed. Nelson v. Young, 223 So.2d 218 (La.App. 2d Cir.1969). We based our decision on the provisions of LSA-C.C. art. 794 (1870) (repealed):
The servitude is preserved to the owner of the estate to which it is due, by the use which any one, even a stranger, makes of it, provided it be used as appertaining to the estate. * * * [emphasis supplied]
The supreme court affirmed, but chose to rely on a theory of quasi-contract. This was based on the approving silence of the servitude owners when the lease was executed by the landowner and production was established under the lease. Through this approving silence, a quasi-contractual relationship was established, whereby the landowner's act became the servitude owner's act, thus interrupting prescription. 234 So.2d at 59.
The reasoning of Nelson v. Young was not enthusiastically received. Justice Barham filed an incisive dissent. 234 So.2d at 62. One noted commentator said the reliance on the mineral servitude owner's benign silence was "questionable at best" and the conclusion was reached by "an undefined process." G. Hardy, Work of Appellate Courts 1969-1970: Mineral Rights, 31 La.L.Rev. 263, 265 (1971). The decision was grounded firmly in its own facts but appeared to be contrary to jurisprudence holding that execution of a lease by a landowner does not automatically interrupt prescription[1] and that no act by a landowner should have the effect of interrupting prescription unless he intended it to do so.[2]
Sensitive to this criticism, the redactors of the new mineral code in 1975 legislatively overruled Nelson v. Young. LSA-R.S. 31:43, official revision comment; G. Hardy, Highlights of the Mineral Code Recommendations, 32 La.L.Rev. 542, 560 (1972). Mineral Code article 43 (LSA-R.S. 31:43) defines when a person is acting on behalf of the servitude owner:
A person is acting on behalf of the servitude owner only when there is a legal relationship between him and the servitude owner, such as co-ownership or agency, or when there is clear and convincing evidence that he intended to act for the servitude owner. Silence or inaction by the servitude owner will not suffice to establish that a person is acting on behalf of the servitude owner.
When we apply this article to the instant case, there is no way to construe Nix's acts to benefit Producers' servitude. Nix was the agent of defendant landowner only. He was not contractually bound to Producers. Producers does not allege that Nix was a co-owner, or an agent of a co-owner, of Producers' mineral servitude. The final sentence of the article completely rejects the "silent approval" theory. Thus, under the Mineral Code, these operations did not interrupt prescription for the servitude owner.
On this particular point, we think the mineral servitude owner would always approve of good faith operations conducted by someone else and at someone else's expense and risk, if these operations freely benefit him. The servitude owner has numerous remedies to protect himself against surreptitious exploration by surface owners.[3] The legislature has decided that he does not need the additional protection of the fiction of Nelson v. Young.
Producers next argues that even if the Mineral Code defeats its claim, then the Mineral Code should not be applied to impair its vested right. Producers' mineral servitude was first created in 1941. The law announced by Nelson v. Young *1102 entitled it to rely on the landowners' operations to sustain its mineral rights. This law was not changed until 1975, after prescription had already begun to accrue. Thus it claims that it should be allowed to retain its position under the old law and reap the benefit of the landowners' acts. The provisions of the Mineral Code apply to all mineral rights including those existing on the date it became effective, January 1, 1975, but no provision can divest rights already vested or the obligations of contracts. LSA-R.S. 31:214. The simple answer to this argument is that the expectation that laws about liberative prescription will not change is not a vested right. Anadarko Production v. Caddo Par. Sch. Bd., 455 So.2d 699 (La.App. 2d Cir.1984), writ denied 460 So.2d 610 (La.1984), appeal dismissed ___ U.S. ___, 105 S.Ct. 1830, 85 L.Ed.2d 131 (1985).
Producers then argues as a sub-issue that the question is not whether the legislature may change an existing prescriptive period. Rather, the question is whether the legislature may redefine what acts will interrupt prescription after the servitude owner has come to rely on the old law. The legislature may unquestionably do so. Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566 (1940). More specifically, the legislature may always pass laws for prospective application. LSA-Const. Art. 1 § 23; LSA-R.S. 1:2; LSA-C.C. art. 8; see also USCA-Const. Art. I § 10. In 1975, the legislature said that operations by a landowner would no longer interrupt prescription against a mineral servitude owner. In 1979, the defendant, a landowner, performed such operations. To apply the Mineral Code to these acts is purely prospective, and the trial court was correct to do so. Cf. Cox v. Sanders, 421 So.2d 869 (La.1982).
There is another part of the codal scheme that undermines Producers' argument of reliance or impairment of vested rights. LSA-R.S. 31:44 provides that a mineral servitude owner may adopt operations or production by a person other than an agent or co-owner if his servitude includes the right to conduct operations of the kind involved. Adoption is accomplished when the servitude owner files for registry in the conveyance records of the situs of the servitude an instrument describing the land subject to the servitude, identifying the operations, specifying the date on which operations commenced, and expressing the intent to adopt them as his own. LSA-R.S. 31:46. This is nothing more than a change in the procedure, not the substance, of adopting the operations of another. Procedural laws can be given general, retrospective effect because no one has a vested right in any given mode of procedure. Denver Rail Co. v. Railroad Trainmen, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978). The additional grant of time is sufficient to protect any vested right, and is more than sufficient to protect the mere expectation that Producers has shown here. Cf. Bunch v. Quinn-L Baton Rouge Partnership, 424 So.2d 1210 (La.App. 1st Cir.1982), writ denied 429 So.2d 131 (La.1983). Producers did not comply with the method outlined in 31:46.
Producers also argues that application of the Mineral Code to defeat its deeds is an impairment of contract. USCA-Const. Art. I § 10; LSA-Const. Art. 1 § 23. The contract clause is not an absolute. An impairment of contract may be valid if it is reasonable and necessary to serve an important public purpose. Cf. United States Trust Co. v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); Delta Air Lines v. City of New Orleans, 430 So.2d 1041 (La.App. 4th Cir.1983), writ denied 439 So.2d 1068 (La.1983). The mineral code was reasonable and necessary to serve an important public purpose. Finally, the code itself is intended to apply to all mineral rights, including those existing on the effective date of the code. LSA-R.S. 31:214. Producers' constitutional rights have not been offended.
Producers finally urges that even if the Mineral Code is properly applied and defeats its claim, then the provisions of the *1103 Civil Code should apply. Producers specifically relies on old code article 794, which is reproduced in LSA-C.C. art. 757 (1977). We relied on old art. 794 and the general rules of predial servitudes in our Nelson v. Young decision, supra. The supreme court did not reject this reasoning. 234 So.2d at 60. We feel, however, that the issues involved in this case are uniquely mineral issues, and LSA-R.S. 31:2 provides the answer:
§ 2. Relation to the Civil Code
The provisions of [the Mineral Code] are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.
The provisions of the Mineral Code specifically apply to this case. When we decided Nelson v. Young, there was no Mineral Code. The decision was not wrong, but to follow it now would be to disregard statutory mandate. We therefore find Producers' argument based on the Civil Code without merit.
In summary, the Mineral Code leaves untouched and unimpaired the substantive right which Producers acquired, a mineral servitude. The Code's application in this situation does not affect actions or transactions that occurred before its effective date. Producers' vested rights were in no way disturbed, nor was its contract impaired. Furthermore, the Code preserved Producers' right to adopt the operations or production of someone like Nix. It only changed the procedure and specified a reasonable time for so doing. Thus there is no violation of the constitution in applying the Mineral Code to this case.
The trial court's judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Union Oil Co. v. Touchet, 229 La. 316, 86 So.2d 50 (1956).
[2] LeBleu v. LeBleu, 206 So.2d 551 (La.App. 3d Cir.1967).
[3] See G. Hardy, Work of Appellate Courts 1969-1970: Mineral Rights, 31 La.L.Rev. 263, 267 (1971).