541 So.2d 382 (1989)
BARTON LAND COMPANY, et al., Appellant,
v.
Malcolm D. DUTTON, et al., Appellee.
No. 20439-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
Writ Denied May 19, 1989.
Walker, Tooke, Perlman, Lyons & Clawson by S. Judd Tooke, Shreveport, for appellant.
Burt & Lavigne by Kim Hanson Lavigne, Shreveport, for appellee.
Before FRED W. JONES, Jr., LINDSAY and HIGHTOWER, JJ.
*383 FRED W. JONES, Jr., Judge.
In 1978 Dutton entered into a lease with the City of Shreveport for 47.9 acres of land located in Bossier Parish to be used as a sanitary landfill. The rent was $100 per month, and the lease was automatically renewable on an annual basis. The parties amended the lease in October 1980, increasing the rent to $900 per month and adding 50 acres to the land leased. Subsequent amendments ultimately increased the rent to $3,000 per month.
In August 1987 plaintiffs Murphy Nash, Jr., McKinley Nash, Willianna Barton Kellum ("Nash petitioners") and Barton Land Co. filed suit against Dutton, claiming ownership of 32.5 of the 50 acres added by the amendment. They alleged that at the time of the 1980 amendment, 32.5 acres of the 50 acres was owned by the "Nash petitioners", who subsequently transferred the property to Barton Land Co. on September 1, 1984. They therefore claimed entitlement to a portion of the rental payments received by defendant.
Defendant denied plaintiffs' ownership of the 32.5 acres in question, and filed a third party demand against the City, claiming that if plaintiffs were entitled to receive any money under the lease (which was denied) then it was owed by the City and not him, and he was entitled to judgment against the City for any amount that he was required to pay plaintiffs. The City denied liability to defendant, asserting that its obligation to defendant was extinguished by payment of all sums due defendant under either the contract of lease or any other contract; plaintiffs had no right of action against it under these circumstances; and any injury sustained by plaintiffs was caused either willfully or negligently by defendant.
Defendant then filed a peremptory exception of no right of action, contending that plaintiffs' action was one for unjust enrichment, and that they were required to sue the City for the allegedly erroneous payment. Defendant relied upon Articles 2301 and 2302 of the Louisiana Civil Code.
The trial court sustained defendant's exception of no right of action, and held that only the City had the right to reclaim the amount erroneously paid defendant.
Plaintiffs appealed this judgment, claiming that they have a right of action against the defendant based on quasi-contract. They contend that La.C.C. Art. 2301 should be read in conjunction with La.C.C. Arts. 2293 and 2294, thereby establishing their right of action against the defendants.
The articles governing quasi-contracts are found in chapter 1 of title 5 of the Civil Code. La.C.C. Art. 2293 defines quasi-contracts as:
Quasi-contracts are the lawful and purely voluntary act of a man from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.
Article 2294 provides:
All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi-contracts. But there are two principle kinds which give rise to them, to-wit: The transaction of another's business, and the payment of a thing not due.
There is no allegation that defendant transacted business for plaintiffs. Articles 2301 and 2302, pertaining to payment of a thing not due, provide as follows:
La.C.C. Art. 2301:
He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
La.C.C. Art. 2302:
He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.
A literal reading of these articles suggests that defendant's interpretation of the codal scheme governing quasi-contracts is correct, and recovery based on this theory is only permitted when the payments to a defendant of a sum not owing is made by the plaintiff, and not by a third party. Plaintiffs strenuously argue against such an interpretation, and rely on several cases which they contend establish a jurisprudential *384 extension of Article 2301 to allow recovery in cases of third party payment such as this.
The cases cited by defendant involve factual situations almost identical to this case. As recently as 1987, in Win Oil Co., Inc. v. UPG, Inc., 509 So.2d 1023 (La.App. 2d Cir. 1987), this court held that an assignee, who was the rightful payee of crude oil sale proceeds held in suspense, could not recover proceeds from a wrongful payee under the theory of unjust enrichment. Citing La.C.C. Art. 2301, we stated:
"UPG paid to Decker & Associates, Inc. money owed not to Decker & Associates, Inc., but to Win Oil. Decker & Associates is obligated to restore the money to UPG, the party making the payment, but not to Win Oil."
Explaining further, we added:
"That Decker & Associates became a debtor of UPG does not make it a debtor of Win Oil. Unjust enrichment is not applicable because, although Decker & Associates, Inc. has been enriched, Win Oil has not been impoverished. Win Oil remains a creditor of and entitled to be paid by UPG, and there is no indication that UPG cannot satisfy the judgment against it." Id. at 1026.
In Nelson v. Young, 223 So.2d 218 (La. App.2d Cir.1969), writ granted, 254 La. 454, 223 So.2d 867 (1969), modified on unrelated matters, 255 La. 1043, 234 So.2d 54 (1970), relied upon by this court in Win Oil, we denied recovery for a quasi-contractual claim made in another factually similar situation. In that case, plaintiffs alleged they were owners of all the minerals existing under a certain tract of land and sought an accounting and return of monies received by defendants, surface owners of the land, under certain mineral leases and oil and gas operations. Addressing the quasi-contractual theory of liability, Judge Dixon stated:
"Defendants have not undertaken the management of the affairs of the plaintiffs. As for the concept of unjust enrichment, Civil Code Article 2301 requires that one who receives what is not due him must restore it to the one from whom he received it (Emphasis added). There is no requirement that one who received a payment due another must search out the true creditor and deliver the funds to him. The obligation runs from him who received the payment to him who paid. The one who was entitled to receive the payment retains that right until it is prescribed; he does not acquire an additional debtor by the misapplication of the payment by the original debtor." Nelson, supra, at 223.
In accord, see Johnson v. Hospital Affiliates International, Inc., 416 So.2d 207 (La.App. 1st Cir.1982); Louisiana and Southern Life Insurance v. New Orleans S.S., 384 So.2d 594 (La.App. 4th Cir.1980).
In Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967), our Supreme Court, discussing the nature of the quasi-contractual obligation, stated:
"There is a general concept of quasi-contractual obligations; it is a concept based upon the principle that where there is an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment or else, in some cases, the amount of the impoverishment must be restituted. [Citing Plainol, Traite Elementaire De Droit Civil, T. 2, n812, n813 (8th ed.1939)]." Id. 205 So.2d at 432.
The court then adopted the five prerequisites to the suit by action de in rem verso in French law for the successful action based on unjust enrichment in modern Louisiana law: 1) There must be an enrichment; 2) there must be an impoverishment; 3) there must be a connection between the enrichment and the impoverishment; 4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and 5) the action is subsidiary or corrective in nature, i.e. it is only allowed when there is no other available remedy at law. Id. [citing Nicholas, Unjustified Enrichment in Civil Law and Louisiana Law, 36 Tul.L.Rev. 51 (1962) ].
Plaintiffs contend they are not subject to these requirements because they seek relief specifically based on a quasi-contractual theory of recovery under Article *385 2301, and defendant's unjust enrichment is merely the result of the City's erroneous payments. We do not agree. It seems clear that the codal remedy afforded by the articles on quasi-contracts is based on the broad theory of unjust enrichment found originally in French and German law. Minyard, supra; Nicholas, Unjustified Enrichment in Civil Law and Louisiana Law, supra. Accordingly, the courts in both Nelson and Win Oil discuss the theory of unjust enrichment in connection with claims based on Article 2301. The fact that the remedy is labeled unjust enrichment instead of quasi-contract, or vice versa, is of no consequence.
Therefore, we find the prerequisites for an action in unjust enrichment, set forth in Minyard, supra, applicable to this case. Here, as in Win Oil and Nelson, there has been no impoverishment, for plaintiffs retain whatever rights they may have against the City until they prescribe.
Although the cases cited by plaintiffs permit recovery by a third party in analogous situations, and thus appear to support plaintiffs' position, we find them to be either distinguishable from or simply inapplicable to the present situation, and thus not dispositive.
The court in Munson v. Martin, 249 La. 925, 192 So.2d 126 (1966) allowed Martin to recover from Munson for part of the consideration paid by the Town of St. Francisville to Munson for a water system which included parts owned by Martin. However, the court also found that there was no completed contract of sale of the subdivision's water system between Martin and Munson before Munson subsequently sold it to the Town of St. Francisville. In this case, there existed a valid contract of lease between defendant and the City of Shreveport, and as Judge Hall stated in Win Oil, supra, the obligation runs from the one who received the payment to him who paid. This court cannot enforce the terms and conditions of defendant's lease with the City against those not a party to the contract.
Roney v. Peyton, 159 So. 469 (La.App. 2nd Cir.1935), upon which plaintiffs also rely, is not applicable to this case. It involves a situation in which plaintiff, receiver of a bankrupt corporation, sued defendant to recover funds he collected on a note owned by the bankrupt corporation and pledged to defendant by an employee of the corporation to secure the employee's personal debt. The court, finding that defendant knew the note belonged to the corporation and could not be pledged by the employee to secure his own personal debt, ordered defendant to return the money to the corporation. In this case, there is no allegation that either the defendant or the City acted in bad faith.
In Smith v. Phillips, 175 La. 198, 143 So. 47 (1932), defendant, who was plaintiff's creditor, had received money from the Clerk of Court as a result of a sheriff's sale, and following a reversal of the judgment in plaintiff's favor, plaintiff was allowed to recover against the defendant, rather than against the Sheriff or Clerk of Court, since the latter were required by law to turn the proceeds of the sale over to defendant. We agree with defendant that this case was apparently based on the policy of protecting law enforcement officials in the exercise of their duty to disburse funds pursuant to law.
Nor do we find Equilease Corporation v. Smith International, Inc., 588 F.2d 919 (5th Cir.1979) applicable to this case. Plaintiff in that case was given fraudulent information and documentation upon which it relied to purchase oil field equipment which did not exist. All knowledgable participants in the scheme filed bankruptcy before plaintiff realized what had happened. Plaintiff was therefore allowed to recover against the only solvent participant left, even though he had no knowledge of the fraud. As stated, in this case there is another available remedy for plaintiffs.
For these reasons, we find no error in the trial judge's dismissal of this suit upon sustaining defendant's exception of no right of action and AFFIRM the judgment, at appellant's cost.