655 So.2d 694 (1995)
ELLWOOD OIL COMPANY, et al., Plaintiffs-Appellants,
v.
Gertrude Feazel ANDERSON, et al., Defendants-Appellees.
No. 26,907-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*695 Bodenheimer, Jones, Klotz & Simmons by David Klotz and Mary L. Coon Blackley, Shreveport, for Ellwood Oil Co., Columbia Gas Dev. Corp. and Rutherford Group, appellants.
Michael W. Mengis, Houston, TX, for Rutherford Group, appellant.
Barlow and Hardtner L.C. by Ray A. Barlow and Jay A. Greenleaf, Shreveport, for appellees.
Before MARVIN and HIGHTOWER, JJ., and GUIDRY, J., Pro Tem.
MARVIN, Chief Judge.
In this action between co-owners of production from a gas well that produced for almost 30 years before it became depleted in 1990, the plaintiffs who did not receive their respective percentage share of production appeal a judgment sustaining exceptions of no right of action filed by co-owners who received more than their respective percentage share of production.
This litigation arose out of two circumstances: The 1961 drilling-production unit order and the 1963 operating agreement between the co-owner litigants and the operator provided that each co-owner had the right to receive "in kind" and to dispose of or *696 sell its share of production separately, which the co-owners did. Secondly, the operating agreement did not provide for "cash balancing" between a co-owner whose production was disproportionate to its respective percentage share of production, one taking and separately selling more, and the other taking and separately selling less.
Operating agreements of more recent vintage than the 1963 agreement contain cash balancing provisions to resolve the problem that is here presented. The record and the operating agreement support the conclusion that the parties to the 1963 agreement did not consider either the problem of disparate "taking" by a respective co-owner or a contract [cash balancing] provision to resolve the problem.
Reversing, we overrule the exceptions of no right of action and remand.

FACTS
As evidence at hearing on the exception, the litigants stipulated the facts, which we shall summarize. An order of the Commissioner of Conservation in 1961 created the 476-acre drilling unit on which the L. Stark No. 1 well, as the production unit well, produced gas until it ceased to produce in 1990.
Plaintiffs, the Rutherford Group, Columbia Gas Development Corporation, and Ellwood Oil Company, assignee of Phillips Petroleum, not having received their respective share of production, were under-produced, while the Anderson group was over-produced by the time the well was depleted. The co-owners respectively owned these percentages of production, according to the stipulation:

Exxon .1636778
Sun/Oryx .0970838
The Andersons [Defendant] .0599601
The Rutherford Group [Plaintiff] .3396391
Columbia Gas (CGDC) [Plaintiff] .1698196
Phillips' Assignee, Ellwood Oil
Company [Plaintiff] .1698196
 _________
 1.0000000

Having earlier settled their under-production claims with Exxon and Sun/Oryx, the plaintiffs sought cash balancing from the Andersons in their action.
The 1963 operating agreement designated Exxon's predecessor, Humble, as the operator of the well. The remaining owners were classified as "non-operating" owners. Exxon, Sun/Oryx, and the Andersons contracted to, and did, sell their respective percentage of production to Monterrey Pipeline Company. Phillips, the Rutherfords, and CGDC contracted to, and did, sell their respective percentage of production to Columbia Gas Transmission Corporation. Monterrey Pipeline continued to purchase gas from the well until it was depleted. Toward the end of the well's productivity, Columbia ceased purchasing gas from the well. Monterrey Pipeline purchased and paid Exxon for all production from the well thereafter.
Exxon, a co-owner of its share of production, acted in several capacities. As a seller of gas to Monterrey Pipeline and as operator of the well, Exxon was obligated to its co-owners to produce and to distribute the gas in accord with the operating agreement and the respective gas purchase contracts the co-owners, including Exxon, had executed. Exxon, of course, was authorized as operator to deliver or to distribute its share of the gas and that of Sun/Oryx and the Andersons as they directed [to Monterrey Pipeline] and the share of the gas of the plaintiffs as plaintiffs directed [to Columbia Gas Transmission Corporation]. Exxon, however, was not directed or authorized to deliver or to distribute to Monterrey Pipeline the share of the gas that was owned by the plaintiffs in this action.
The operating agreement requires the purchaser(s) of gas [not the operator] to pay the owner-sellers of the gas. The operating agreement authorizes the operator to sell a non-operator's [co-owner's] share of the gas only when the non-operator has not exercised the right or privilege of taking in kind or separately disposing of its share of the gas. The plaintiffs exercised their rights and separately sold their respective share of the gas to Columbia Gas Transmission Corporation. Notwithstanding these limitations in the operating agreement, Exxon delivered or distributed plaintiffs' share of the gas to Monterrey Pipeline without authority or direction from plaintiffs.
When Exxon was paid for the gas by Monterrey Pipeline, Exxon was not acting as *697 operator, but received the payments as a co-owner and as agent for its co-owners and sellers, the Andersons and Sun/Oryx, who, with Exxon, had executed the gas purchase contract with Monterrey Pipeline.
When the well was depleted, plaintiffs complained of the disparity, their being under-produced. Exxon and Sun/Oryx parties paid plaintiffs their respective share of their over-production. Exxon also paid the Andersons to rectify and to adjust to the correct proportions a disparity of payments between themselves.
The trial court sustained appellees' peremptory exception of no right of action without assigning reasons.

DISCUSSION

Absence of a Gas Balancing Provision
The Operating Agreement provides "Non-Operator shall have the right and privilege of receiving in kind and separately disposing of its portion of the production from the Contract Area." Stated another way, a co-owner who desires to take in kind or to sell its share of production separately may do so. This provision does not require a co-owner to take in kind and to dispose of its share of the gas separately or to forfeit that right and privilege. If a co-owner elected not to take in kind and to dispose separately of its share of the gas, the operator, Exxon, had the authority to dispose of the share of the gas of that co-owner, according to the agreement.
We have noted that a gas balancing provision was not considered by the parties. The record is also devoid of any evidence that the parties recognized or resolved or dealt with the risk that disparity from over or under-production might occur before the well became depleted. We cannot agree that the mere fact the plaintiffs had the right to take in kind necessarily means that their failure to do so amounted to their assumption of that risk. We deem Chevron U.S.A., Inc. v. Belco Petroleum Corp., 755 F.2d 1151 (5th Cir.1985), cert. denied, inapposite because that case involved the interpretation of a gas balancing contract provision in which Chevron was held to have made a conscious decision to accept the risk that it might be under-produced at depletion.
We also find distinguishable Barton Land Co. v. Dutton, 541 So.2d 382 (La.App.2d Cir. 1989), writ denied, (no co-ownership), Win Oil Co., Inc. v. UPG, Inc., 509 So.2d 1023 (La.App.2d Cir.1987) (purchaser paid wrong party), Amoco Production Co. v. Thompson, 516 So.2d 376 (La.App. 1st Cir.1987), writ denied, (not depleted), and Nelson v. Young, 223 So.2d 218 (La.App.2d Cir.1969), 255 La. 1043, 234 So.2d 54 (1970) (purchaser paid wrong party).

Civil Code Resolution
When the parties make no provision in a contract for a particular situation, it must be assumed they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or as necessary for the contract to achieve its purpose. LCC Art. 2054 applies in circumstances where the contract is not ambiguous or doubtful, but simply fails to address a particular question. LCC Art. 2054, revision comment (c).
We therefore revert to principles of co-ownership to determine whether plaintiffs have a right of action against the Anderson group. See Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955); LRS 31:9, 10.
Because of the absence of a specific agreement, general principles of co-ownership are applicable here. It is of no moment that we agree with the Andersons that partition between co-owners is inapplicable here because the well is depleted and nothing is left to partition. On the other hand, we agree with plaintiffs who seek to [re]distribute correctly the revenue from the sale of the co-owned gas production.
Monterrey Pipeline correctly paid its sellers [Exxon, Oryx and the Andersons] through the co-owneragent, Exxon, in accord with the gas purchase contract between them. As stated, Exxon, receiving payment, was the agent of Oryx and the Andersons. They, as co-owners with plaintiffs, having been paid by Monterrey for the share of the gas owned by plaintiffs, became obligated to their co-owner plaintiffs for plaintiffs' share *698 of the proceeds from the production held in co-ownership, less the costs of production. CC Art. 798.
Ownership of the same thing by two or more persons is ownership in indivision. LCC Art. 797. Co-owners share the fruits and products of the thing held in indivision in proportion to their ownership; when fruits or products are produced by a co-owner, other co-owners are entitled to their share of the fruits or products after deduction of the costs of production. LCC Art. 798. Thus, one co-owner has a right of action against another co-owner to recover his share of the fruits or products of the property held in indivision, or the proceeds therefrom. Such an action is not for conversion because each co-owner has the right to sell the fruits or products of the property so long as that owner renders an accounting and gives to the other co-owner his proportionate share.
On these authorities, we conclude that plaintiffs have a right of action against the defendants, the Andersons.

DECREE
The judgment of the trial court is reversed. Judgment is hereby rendered overruling the exceptions of no right of action at the cost of defendants. The case is remanded for further proceedings.